[No. 8080. Department One. November 2, 1909.]

EMMA G. HELLAND, *Respondent*, v. SYLVESTER J. BRIDENSTINE, *Appellant*.[1]

MALPRACTICE—NEGLIGENCE—EVIDENCE—SUFFICIENCY. There is sufficient evidence of negligence to make a case for the jury, in an action for malpractice, in the use of infected and unsterilized instruments from which a disease might have been contracted, where the defendant denied plaintiff's statement that he took the instruments from a drawer without cleansing them or that he ever did so or kept them there, and two other witnesses testified that on similar examinations made by him he took the same instruments from the same place and used them in the same way that plaintiff described.

SAME. There is sufficient evidence to sustain a verdict for malpractice in the use of infected and unsterilized instruments from which a disease might have been contracted, where there was evidence tending to show the negligent use of instruments, without cleansing, that prior thereto plaintiff was free from the disease and could have contracted it in no other way, and became affected within the usual time thereafter for the disease to germinate; as it was only necessary to show a chain of circumstances from which the ultimate fact might reasonably be inferred.

TRIAL—PROVINCE OF COURT AND JURY—EXPERT EVIDENCE. A statement by expert witnesses that a disease cannot develop under certain conditions does not require withdrawal of the issue from the jury, where there was a question for the jury as to the existence of the facts recited on which the conclusion was based.

[1]Reported in 104 Pac. 626.

EVIDENCE—OPINIONS—MEDICAL EXPERTS. A hypothetical question to a medical expert may embody the very fact ultimately to be found, where the inference from the facts proven involved a question of medical science on which the expert's opinion was proper.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS—MEASURE OF DAMAGES. In an action for malpractice it is not reversible error to refuse to give an instruction that the jury could not take into consideration the loss of service or earnings of the plaintiff, which had been alleged in the complaint, where there was no evidence on that subject in the case, and it does not affirmatively appear that the jury went out of its way to find an issue on that subject.

DAMAGES—INJURIES FROM MALPRACTICE—MEASURE—INSTRUCTIONS. In an action for malpractice in negligently communicating a loathsome disease, an instruction on the measure of damages properly submits to the consideration of the jury the plaintiff's physical and mental pain, loss of time, humiliation and disgrace, and expense of effecting a cure, including physician's charges and medicines.

DAMAGES—INJURIES—MALPRACTICE—EXCESSIVE VERDICT. A verdict for $4,000 for malpractice in negligently communicating a private disease by the use of infected instruments, is excessive, and should be reduced to $2,000, where the plaintiff was fully cured without permanent disability, and her losses were less than $200, the balance being for pain and suffering, which must be limited to compensatory damages.

MORRIS, J., dissents.

Appeal from a judgment of the superior court for King county, Rice, J., entered November 6, 1908, upon the verdict of a jury rendered in favor of the plaintiff, for $4,000, for personal injuries received through the malpractice of a physician. Reversed and a new trial ordered unless $2,000 is remitted.

*Peters & Powell*, for appellant.

*Walter D. Peters, James W. Carr, John E. Humphries*, and *George B. Cole*, for respondent.

FULLERTON, J.—The respondent, a widow, brought this action against the appellant, who was a physician and surgeon in active practice in the state of Washington, to recover for injuries received by her arising from alleged mal-

practice on the part of the appellant. The alleged mal-
practice consisted of the use in and on her genital organs of
unclean and unsterilized instruments, whereby there was com-
municated to her a loathsome disease technically known as
gonorrhea, from which she suffered great bodily pain and
mental anguish to her damage in a large sum of money.

The appellant answered the complaint admitting his at-
tendance upon her in the manner claimed, but denied that the
instruments he used upon her person were unclean or un-
sterilized, or that the disease known as gonorrhea, or any
disease, had been communicated to her thereby, and denied
that she had such a disease as gonorrhea or that she had been
damaged in any sum whatsoever through any act of his. The
cause was tried on the issues thus made before the court sit-
ting with a jury, and resulted in a verdict and judgment in
favor of the respondent in the sum of $4,000, from which this'
appeal is taken.

The assignments of error suggest five principal questions,
(1) that the evidence was insufficient to sustain the verdict
and judgment; (2) that the court erred in refusing to give
an instruction requested by the appellant; (3) that the court
erred in permitting a witness to answer a certain hypotheti-
cal question; (4) that the court erred in instructing the jury
as to the amount of the recovery; and (5) that the verdict is
excessive. These questions we will notice in their order.

The evidence on the part of the respondent tended to show
that the respondent had been suffering for a number of years
with some nervous affliction; that early in the year 1906, her
troubles became more acute, when she called in the appellant
to prescribe for her; that he examined her as to her symp-
toms and prescribed some form of medicine which she took as
directed, but which gave her only temporary relief; that the
appellant thereupon stated to her that her symptoms indi-
cated some derangement of the genital organs, and that if
she would call at his office he would examine her for the pur-
pose of ascertaining whether any such derangement was the

source of her ill health; that she called as requested, on or about February 1, 1906, when the doctor proceeded to examine her genital organs, using for that purpose certain instruments, called a speculum and probe, which he took from a drawer nearby; that the instruments when taken from the drawer were wrapped in a towel, and were used upon her as they were when taken from the towel, without being washed or cleansed in any manner; that between five and ten days thereafter she began to be troubled with inflammation and pain in the parts affected, accompanied by a discharge, which gradually became more severe, causing her to take to her bed; that she again called in the appellant as her physician, stated to him her trouble, and received from him certain remedies which she applied as directed; that he continued to treat her for about a month thereafter, when she notified him that she did not require his services further; that shortly after this he called at her residence and offered her free treatment which she accepted, and for some time thereafter he treated her medically, giving both internal remedies and remedies to apply locally in the form of suppositories; that during this latter treatment he made another examination with the speculum, and stated to her that she would probably have to be operated on surgically before she could be cured; that the respondent refused to submit to such an operation, whereupon he ceased to treat her further.

The respondent further testifies that she was in bed most of the time suffering from pains in the genital region of her body, accompanied by a discharge of a purulent nature, between the time the appellant quit treating her and August 15, 1906, when she consulted another physician of Ballard, who pronounced her disease to be gonorrhea; that this physician treated her for some three months thereafter, finally pronouncing her substantially cured. She also testified that her husband died on January 11, 1906, and that she had not had sexual intercourse with him for some weeks preceding his death. She was not asked, and did not testify directly, that

she had not had sexual intercourse with any other man, but did state that her husband had no venereal disease, and that there was no other way than from the appellant's instruments by which she could have obtained the disease. The physician treating her last also testified that when she called upon him in August, 1906, for treatment she was suffering from chronic gonorrhea, which he ascertained not only from her diagnostic symptoms, but by finding in the discharge from her genital organs the specific microbe of the disease. He testified also as an expert that the respondent could acquire the disease from an infected speculum used upon her in the manner she testified this one was used.

The appellant testified that he was called upon to treat the respondent in January, 1906, when he found her complaining of much pain in the side in the region of the liver and pleura and of considerable pain in the abdomen and right ovary; that later she complained of soreness in the ovaries and womb and some discharge; that he requested her to come to his office for an examination; that she did come and he examined her genital organs, finding an enlarged condition of the womb, some inflammation of the mucous membrane, accompanied by a discharge; that in making the examination he used a speculum, a probe and forceps; that these instruments were kept on top of a medicine case in his office; that they were never kept in a drawer; that after using them he always washed them in a mercuric iodine solution and soap and hot water, and immediately before using them he sterilized them by boiling them in hot water in a receptacle on a gas stove in the back part of his office, and that it was in this manner that these instruments had been cleansed and sterilized before use on the respondent; that the last time he had used the instruments prior to January 25, the date he used them on the respondent, was on January 19, on a woman suffering from chronic uterine trouble, not gonorrhea, and not infectious, and that he had not treated a case of gon-

orrhea in a female for many months prior to the time he treated the respondent.

He further testified that his office was heated by a steam heater operated only in the daytime; that at night the office would become cold, running down to a temperature of from 50° to 55° Fahrenheit. The appellant also called a number of expert witnesses who testified, in substance, that gonococci, the microbes of gonorrhea, could not survive in a temperature as low as 50° or 55° Fahrenheit for any length of time, certainly not as long as four days, especially upon a nickel plated instrument such as a speculum; and each of them testified that, under the circumstances testified to by the appellant, it was impossible that the respondent could have obtained gonorrhea from his treatment. In rebuttal two witnesses testified that the appellant had made an examination upon them similar to the one made on the respondent, the one in April, 1906, and the other in June, 1906, and that in neither case did he sterilize the instruments before using them; that he took them from a drawer where they were kept wrapped in a towel, and used them without cleansing or sterilizing in any manner.

There was here, we think, sufficient evidence on the questions of the appellant's negligence, whether the respondent had actually become infected with gonorrhea, and whether the disease was communicated to her by means of the instruments the appellant had used upon her person, to require their submission to the jury. The respondent was not required to prove her case beyond a reasonable doubt, nor by direct and positive evidence. It was only necessary that she show a chain of circumstances from which the ultimate fact required to be established is reasonably and naturally inferable. If it be true (and whether or not it is true was for the jury) that the respondent went to the appellant's office free from gonorrhea; that the appellant introduced into her vagina a speculum, which he used on other patients, without cleansing or sterilizing it, and that with-

in the time thereafter usual for such a disease to generate, she became afflicted with the disease, and there was no other known source of infection, it is a reasonable inference that she caught the disease from the instrument used upon her by the appellant, and that the disease was negligently communicated to her. Nor is the inference so far overcome by the evidence of the expert witnesses as to require the court to take the question from the jury. None of them purported to testify how long the microbe gonococcus would live on a speculum which was wrapped in a towel and placed in a drawer in the temperature of the appellant's office, and the court is not at liberty to assume that their evidence related to such a condition. Moreover, the opinions of experts are taken to aid the jury in arriving at the ultimate fact, and no matter how positive may be their conclusions drawn from a given state of facts, it is still a question for the jury whether or not the facts recited on which the conclusion is based are the facts proven by the evidence, and whether or not the conclusion is correctly drawn. For these reasons we think the facts sufficient to sustain the verdict of the jury.

The hypothetical question complained of was a fair summary of the facts which the respondent's evidence tended to prove. True the question embodied the very fact that was ultimately to be found by the jury, but this does not render it incompetent. To reach their final conclusion the jury were compelled to draw an inference from the facts proven which involved a question of medical science; that is to say, after all of the facts had been given in evidence, it was still a question whether the disease could be communicated in the manner recited, and as that question involved a matter of medical science, it was proper to submit to the jury on the question the opinion of an expert versed in that science.

The requested instruction was the following:

"You are instructed that should you find for the plaintiff in any sum you should not take into consideration or allow her any sum for loss of service or earnings as there is no evidence in the case to support such a claim."

There was in fact no evidence introduced in the case tend-ing to show loss of service or earnings on the part of the ap-pellant, and, inasmuch as loss of earnings was one of the ele-ments of damage alleged in the complaint, the court might very properly have given the instruction requested. But it was not reversible error in this case to fail to do so. There was no misdirection on this point; what fault there was lies in the fact that the jury were not specially cautioned as to the matter. But it will not be presumed that the jury went out of its way to find on an issue on which the evidence was silent. It does not affirmatively appear that they did so, and to constitute error it must so affirmatively appear. Error must be shown affirmatively; it is not presumed.

On the question of the amount of the recovery the court instructed as follows:

"If you find for the plaintiff, you will allow her such sum as will compensate her for the injury sustained. In fixing the damages, if you find any, you will take into consideration the physical and mental pain and suffering by the plaintiff if any, by reason of the injury and loss of time if any, the sense of humiliation and disgrace if any, the expense of effecting a cure, including physician's charges and medicines if any; and from those considerations allow her such sum as will com-pensate her for the injuries sustained by her, if any."

This instruction is within the rule of the case of *Niemeyer v. Washington Water Power Co.*, 45 Wash. 170, 88 Pac. 103, and the cases there cited, and on the authority of those cases we hold it free from error.

It is finally contended that the verdict of the jury is ex-cessive. This contention we think must be sustained. The appellant fully recovered from the disease, and no permanent disability or injury resulted therefrom. Her losses because of inability to perform her ordinary duties while afflicted were but little more than nominal, and her expenditures for medi-cines and medical fees were inconsiderable—the whole of her losses in these respects did not exceed at the utmost the sum of two hundred dollars. The remainder of the verdict, there-

for, was awarded as damages for bodily pain and suffering and for mental anguish. For her pain and suffering, both physical and mental, she is of course entitled to full compensation, but this is the extent of her rights. Nothing should be awarded her as smart money, or for the purpose of punishing the defendant; the right to punish being the prerogative of the state. Comparing the award of the jury with the evidence of the respondent concerning her damages, we fear the jury lost sight of the fact that compensation for the injuries suffered was the purpose of the action, and that they have allowed a recovery for matters not properly within their province. We shall not, however, direct a new trial in the first instance, but will remand the case with instructions to allow the respondent to take her choice between a judgment for two thousand dollars and a new trial of the action. The order will be, therefore, that if the respondent, within thirty days after the remittitur reaches the trial court, consents in writing to take a judgment for two thousand dollars, the trial court is directed to enter judgment in her favor for that sum; if she does not so consent, then a new trial will be awarded. The appellant will recover costs in this court.

RUDKIN, C. J., CHADWICK, and GOSE, JJ., concur.

MORRIS, J., dissents.