[No. 32439. Department One. June 23, 1953.]

HAROLD F. NELSON, *Appellant,* v. ALBERT MURPHY *et al.,*
*Respondents.*[1]

[1]Reported in 258 P. (2d) 472.

■■■■■■ ■■■■■■

■■■■■■■■■■■■

■■■■■ ■■■■

*Monheimer, Schermer & Mifflin,* for appellant.

*Clarence J. Coleman* and *Eggerman, Rosling & Williams,* for respondents.

MALLERY, J.—The plaintiff appeals from a judgment of dismissal sustaining a challenge to the sufficiency of the evidence.

The plaintiff, a fifty-five-year-old married man, was employed at the Bayside Iron Works in a supervisory capacity, which required him to make himself heard above the din of operations in the machine shops.

In November, 1948, he called at the office of the defendant, Dr. Albert Murphy, for an examination to determine the cause of an excessive amount of phlegm in his throat. His voice was "perfectly fine and normal." He was able to sing and to carry on his work successfully. The examination disclosed two small growths on his vocal cords located at their apex. The defendant removed the growths on December 3, 1948, and immediately thereafter and up to the time of the trial the plaintiff's voice was hoarse, low-pitched, and difficult to understand, so that he was unable to continue his employment.

The general rules in malpractice cases are stated in *Derr v. Bonney,* 38 Wn. (2d) 678, 231 P. (2d) 637, as follows:

"Before a physician or surgeon can be held liable for malpractice, he must have done something in the treatment of his patient which the recognized standard of medical practice in his community forbids in such cases, or he must have neglected to do something required by those standards. In order to sustain a judgment against a physician or surgeon, the standard of medical practice in the community must be shown, and, further, that the doctor failed to follow the methods prescribed by that standard; . . . It is not required that physicians and surgeons guarantee results, nor that the result be what is desired; . . . Negligence on the part of the physician or surgeon by reason of his departure from the popular standard of practice must be established by medical testimony. *An exception is recog-*

*nized in those cases in which negligence is so grossly apparent that a layman would have no difficulty in recognizing it."* (Italics ours.)

Plaintiff contends that he falls within the above italicized exception. He states, in his brief, that

". . . it should be recognized that the only medical testimony in plaintiff's case in chief was that of Dr. Murphy, as an adverse witness, and of necessity he did not testify that he had violated the standard of practice. Therefore, it is necessary that the facts of plaintiff's case come within that line of cases holding that [*Olson v. Weitz*, 37 Wn. (2d) 70, 221 P. (2d) 537]:

" 'We have held that some results of medical care and treatment bespeak negligence so plainly that expert testimony is not needed. We have, in effect, applied the doctrine of *res ipsa loquitur* to certain malpractice cases; that is, there are circumstances where it can be said the result speaks for itself.'

"*Helland v. Bridenstine*, 55 Wash. 470; 104 Pac. 626. *Wharton v. Warner*, 75 Wash. 470; 135 Pac. 235. *Cornwell v. Sleicher*, 119 Wash. 573; 205 Pac. 1059."

In *Helland v. Bridenstine, supra,* the plaintiff had been infected with gonorrhea as a result of a doctor using an unsterilized instrument. In *Wharton v. Warner, supra,* a twelve-inch spring was left in the patient's uterus. In *Cornwell v. Sleicher, supra,* a broken bone was so improperly joined that it was apparent to a layman's eye; that was also the situation in *Olson v. Weitz, supra.*

 If the alleged act of negligence, in malpractice cases, is within the general knowledge of laymen, expert medical testimony is not required. The foreign object cases are examples of where this rule applies. A layman does not need expert testimony to know that a doctor who leaves a pair of forceps in the abdomen is guilty of negligence. It speaks for itself. When the doctrine of *res ipsa loquitur* is invoked, it is always a question of law for the trial court to say whether the facts constituting the alleged negligence lie within the general knowledge of laymen, rather than in the realm of medical science.

Plaintiff contends that *res ipsa loquitur* applies in the instant case, because "there is no difference in theory or

actuality between a broken arm that a jury can see and a broken and destroyed voice that a jury can hear."

 The ability of any layman to detect the bad condition of plaintiff's voice may be granted, but the cause of such a condition is a medical question, and not within the certain knowledge of laymen. It, therefore, must be proved by expert testimony. In order for *res ipsa loquitur* to apply, a layman must be able to say, as in the cited cases, that the bad result could not have occurred but for the negligence of the defendant.

 In *Crouch v. Wyckoff*, 6 Wn. (2d) 273, 107 P. (2d) 339, we said:

"A doctor is not to be charged with negligence because the result is not what is desired. *Williams v. Wurdemann,* 71 Wash. 390, 128 Pac. 639; *Lorenz v. Booth,* 84 Wash. 550, 147 Pac. 31; *Hollis v. Ahlquist,* 142 Wash. 33, 251 Pac. 871."

See 162 A. L. R. 1265 for cases holding that a mere bad result will not invoke the doctrine of *res ipsa loquitur.*

We hold that *res ipsa loquitur* does not apply in this case.

Plaintiff contends that, even if he does not come under the doctrine of *res ipsa loquitur,* the medical testimony necessary to make a *prima facie* case was supplied by the testimony of Dr. Secoy. He was asked, in cross-examination, to assume the presence of a polyp at the anterior commissure hanging between the vocal cords; that plaintiff had a clear and resonant voice before the operation was performed; and that plaintiff had a hoarse and discordant voice immediately following the operation and thereafter. He was then asked if, with the assumed facts, the surgical procedure had produced the bad result. He answered that it was medically impossible for a man to have a clear, resonant voice with a polyp separating the vocal cords. (It may be stated that the existence of the polyp is conceded by everyone at all stages of the trial and appeal.) Upon being required to assume that the plaintiff had a clear, resonant voice, he testified:

"A. I can only answer it one way, and that is to say that nobody would operate on a man with a voice like that. Q. In your opinion nobody would operate? A. No. Q. Un-

less they made a wrong diagnosis, is that correct? A. Yes, sir."

Plaintiff contends that, according to the testimony of Dr. Secoy, the existence of a clear and resonant voice established a wrong diagnosis, and in that circumstance it was negligence to operate upon the plaintiff. This contention is not sound. The conclusion of the doctor that no one would operate upon plaintiff was predicated upon the nonexistence of a polyp. His testimony to the effect that a man's voice could not be clear and resonant if there was a polyp is no comfort to plaintiff. The plaintiff has contended at all times that there *was* a polyp. The doctor did not testify that it was contrary to standard medical practice to remove an existing polyp whether malignant or benign. The medical testimony, therefore, does not make a *prima facie* case of departure from approved medical practice in the community.

Plaintiff contends that the trial court erred in granting defendant's motion to make more definite and certain or to strike the allegations of negligence in paragraph six of plaintiff's complaint, and that he should have been allowed to state generally that the defendant was negligent.

The rule is that general allegations of negligence will not withstand motions to make more definite and certain or to strike. In *Dick v. Great Northern Railway Co.*, 12 Wn. (2d) 364, 121 P. (2d) 966, we cited with approval the following rule from *Albin v. Seattle Electric Co.*, 40 Wash. 51, 82 Pac. 145:

" 'If an allegation of negligence is general, the opposite party may properly move the court to require the pleader to make the same definite and certain, so that he may know, with reasonable accuracy, what he is called upon to meet. If the facts . . . are specifically alleged, the pleader . . . should be limited to proof of such facts, otherwise there would be a variance to the prejudice of the opposite party.' "

38 Am. Jur. 954, § 261, states the rule as follows:

"A general allegation of negligence . . . may not be good as against a demurrer on the ground of uncertainty,

or sufficient against a motion to make the pleading . . . more definite and certain."

The judgment is affirmed.

GRADY, C. J., HILL, WEAVER, and OLSON, JJ., concur.

