[No. 13389-0-II.   Division Two.   February 20, 1992.]

RUSSELL VAN HOOK, *Respondent*, v. GERALD ANDERSON, *Petitioner*.

354

*Mary H. Spillane* and *Williams, Kastner & Gibbs,* for petitioner.

*William A. Wilson,* for respondent.

MORGAN, A.C.J. — In this medical negligence case, the trial court denied defendant Anderson's motion for summary judgment and granted plaintiff Van Hook's cross motion as to liability only. Holding that defendant's motion should have been granted, we reverse and remand with directions to dismiss the complaint against defendant Anderson.

The defendant is a surgeon who performed a hernia operation on the plaintiff at Tacoma General Hospital. He was assisted by nurses employed by the hospital. During the operation, he used a number of gauze packs called sponges.

The hospital had previously adopted written procedures governing the use of sponges. These procedures required that two nurses count sponges before they were used, and that two nurses count sponges as they were removed from the patient. If the two counts matched, the nurses were to record that fact in the nursing record of the operation. If the two counts did not match, the nurses were to notify the surgeon, and the entire surgical team was then to look for the missing sponge.

Near the end of the operation, the nurses informed the defendant that the two counts matched. They also initialed their nursing report to reflect that fact. The operation was completed and the plaintiff was moved to the recovery room.

As the defendant was dictating his postoperative report, he became concerned because he could not recall removing one of the sponges. He checked the record of nursing care and found that it listed the sponge counts as correct. When he questioned the nurses personally, however, he was told that the sponge he was concerned about had been counted while it was still in the plaintiff's body.

An x ray showed a sponge still in place on the plaintiff's right side. The defendant immediately informed the plaintiff, who was still in the recovery room. The plaintiff was returned to surgery and the sponge was removed.

After plaintiff sued, the parties made cross motions for summary judgment. The defendant submitted the deposition of Dr. Sola, *an expert selected by the plaintiff*, who testified:

Q: Would you agree that a surgeon performing bilateral [*sic*] herniorrhaphies is operating within the standard of care, if he relies on the sponge count provided to him by the nurses as he proceeds to close the incisions?

A: Yes.

The defendant also submitted his own affidavit, in which he testified:

The standard of care requires the use of sponges and gauze packs as part of the surgical procedure to hold different parts

of the anatomy out of the way in order for the surgeon to repair the patient's hernia. The standard of care requires the nurses to provide the sponges and the standard of care also requires the nurses to make sure the sponges handed back to them by the surgeon equal the number of sponges they provided the surgeon. This count must be made prior to the surgeon's closing the incision. The nurses are required to report to the surgeon as to whether the sponge count is correct prior to completing the incision closure.

Neither party offered any other testimony with regard to how the defendant should have dealt with the sponges and gauze packs used in the operation.

The trial court denied defendant's motion and granted plaintiff's as to liability only. Defendant applied for discretionary review, and his application was granted by a commissioner of this court.[1]

Neither party disputes the liability of the nurses, or of the hospital as their employer. We assume that the nurses had a duty to count the sponges before and after use, that their failure to do so was negligence as a matter of law, and that the hospital was liable under the doctrine of respondeat superior.[2] *See McCormick v. Jones*, 152 Wash. 508, 510-11, 278 P. 181, 65 A.L.R. 1019 (1929).

We are asked to decide the liability of Dr. Anderson. With regard to him, we divide our analysis according to direct and vicarious liability.

## DIRECT LIABILITY

■ One element of an action for medical negligence is the legal duty of care. *Harbeson v. Parke-Davis, Inc.*, 98 Wn.2d 460, 468, 656 P.2d 483 (1983). Under Washington law, that duty requires that a doctor use care equal to or exceeding

[1]Plaintiff claims that the denial of defendant's motion for summary judgment is not before us for review, but he is incorrect. The trial court's order was entitled, "Order on Summary Judgment", and it had two parts. First, it partially granted plaintiff's motion. Second, it denied defendant's motion. Both parts were brought up when the commissioner granted the defendant's motion for discretionary review.

[2]The plaintiff and the hospital have settled. The settlement is memorialized in a "Covenant Not to Sue and Hold Harmless".

that which would be exercised by a reasonably prudent doctor who has the degree of skill, care, and learning possessed by other members of the medical profession in this state. RCW 7.70.040; RCW 4.24.290; *Harris v. Groth*, 99 Wn.2d 438, 439, 444-47, 663 P.2d 113 (1983). The standard of care actually practiced by members of the profession is evidential but not conclusive with regard to what constitutes reasonable prudence. *Harris v. Groth*, 99 Wn.2d at 451. It follows that the legal duty of care and the medical standard of care are similar but not identical concepts.

■ Another element of an action for medical negligence is breach of the legal duty of care, also called negligence. *Harbeson v. Parke-Davis, Inc.*, 98 Wn.2d at 468. A defendant moving for summary judgment on the element of negligence has the initial burden of showing a lack of evidence on that element. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989); *LaPlante v. State*, 85 Wn.2d 154, 158, 531 P.2d 299 (1975). Once that is accomplished, a plaintiff must produce evidence sufficient to support a reasonable inference that the defendant was negligent. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The evidence from both sides is viewed in the light most favorable to plaintiff, both in the trial court and on appeal. *Hontz v. State*, 105 Wn.2d 302, 311, 714 P.2d 1176 (1986); *Wendle v. Farrow*, 102 Wn.2d 380, 383, 686 P.2d 480 (1984).

■ Whether evidence is sufficient to support a reasonable inference that the defendant was negligent can be subdivided into two questions. First, is it sufficient to support an inference of negligence? Second, is it sufficient to support an inference that the negligence was the defendant's?

■ Inadvertently leaving a foreign object in the body of a patient is sufficient to support an inference of negligence. *Conrad v. Lakewood Gen. Hosp.*, 67 Wn.2d 934, 937, 410 P.2d 785, 10 A.L.R.3d 1 (1966); *McCormick v. Jones*, 152 Wash. 508, 511, 278 P. 181, 65 A.L.R. 1019 (1929); *Nelson v. Murphy*, 42 Wn.2d 737, 739-40, 258 P.2d 472 (1953) (dictum); *Wharton v. Warner*, 75 Wash. 470, 475, 135 P. 235 (1913);

*Wynne v. Harvey*, 96 Wash. 379, 384, 165 P. 67 (conceded by doctor), *aff'd*, 99 Wash. 693, 168 P. 896 (1917); Annot., *Malpractice: Liability of Physician, Surgeon, Anesthetist, or Dentist for Injury Resulting From Foreign Object Left in Patient*, 10 A.L.R.3d 9, § 3 (1966). Consequently, the evidence in this case supports an inference that someone was negligent.

■■ Evidence is sufficient to support an inference that negligence was the defendant's when a foreign object is left in the patient and, according to expert testimony, the defendant had the responsibility to remove it. *Conrad v. Lakewood Gen. Hosp.*,[3] 67 Wn.2d at 937; *McCormick v. Jones*,[4] 152 Wash. at 511. Absent expert testimony,[5] evidence is sufficient to support an inference that negligence was the defendant's when a foreign object is left in the

---

[3]At the trial level, plaintiff relied heavily on *Conrad*. On appeal, however, he concedes in his brief, "It is also true that perhaps the Superior Court misplaced their reliance on *Conrad* for the reason that the surgeon in *Conrad* admitted that it was his responsibility to remove sponges prior to closing the incision."

[4]Plaintiff argues that *McCormick* "places the responsibility squarely on the shoulders of the surgeon to remove foreign objects he places in the abdominal cavity during surgery." Although that is true, it is true because *McCormick* involved expert testimony specifically to that effect. In 152 Wash. at 510-11, the Supreme Court said:

> We also think that the court can say, as a matter of law, that, when a surgeon inadvertently introduces into a wound a foreign substance, closes up the wound, leaving that foreign substance in the body, there being no possibility of any good purpose resulting therefrom, that act constitutes negligence. *A fair reading of the testimony of all of the medical experts called on this case leads to that conclusion.*

(Italics ours.)

[5]Defendant contends that absent expert testimony, a jury can never infer that a doctor was negligent. The contention is incorrect. Whether evidence is sufficient to support a reasonable inference that a doctor was negligent varies according to the facts and circumstances of each case, and expert testimony is often but not always required. *McLaughlin v. Cooke*, 112 Wn.2d 829, 837-38, 774 P.2d 1171 (1989); *Harris v. Groth*, 99 Wn.2d at 449, 451; *Petersen v. State*, 100 Wn.2d 421, 437, 671 P.2d 230 (1983); *Hunter v. Brown*, 81 Wn.2d 465, 468, 502 P.2d 1194 (1972); *Nelson v. Murphy*, 42 Wn.2d 737, 739-40, 258 P.2d 472 (1953); *Wharton v. Warner*, 75 Wash. 470, 475, 135 P. 235 (1913); Annot., *Necessity of Expert Evidence To Support an Action for Malpractice Against a Physician or Surgeon*, 81 A.L.R.2d 597 (1962).

patient and the defendant is either (a) the surgeon in charge of the operation, *Nelson v. Murphy*, 42 Wn.2d 737, 739-40, 258 P.2d 472 (1953) (dictum); *Wharton v. Warner*, 75 Wash. 470, 475, 135 P. 235 (1913); *Wynne v. Harvey*, 96 Wash. 379, 384, 165 P. 67, *aff'd*, 99 Wash. 693, 168 P. 896 (1917), or (b) a doctor participating in the operation under circumstances warranting a reasonable inference that he or she had the responsibility to remove the object.[6] *Conrad v. Lakewood Gen. Hosp.*, 67 Wn.2d at 939 (circumstances supported inference that assisting general practitioner was negligent). Contrary evidence supporting an inference that negligence was *not* the defendant's often will not dispel the inference that it was; even if such evidence be "weighty, competent and exculpatory", it will merely generate an issue of fact for the jury to decide under proper instructions. *Brown v. Dahl*, 41 Wn. App. 565, 582, 705 P.2d 781 (1985). Occasionally, however, evidence supporting an inference that negligence was not the defendant's will be so strong as to dispel the countervailing inference; and when that is the case, the defendant's negligence will cease to be an issue of fact for the jury. *Kemalyan v. Henderson*, 45 Wn.2d 693, 706, 277 P.2d 372 (1954);[7] *Leonard v. Watsonville Comm'ty*

---

[6]In some jurisdictions, this proposition is subsumed in the proposition that evidence is sufficient to support an inference that negligence was the defendant's when a foreign object is left in the patient and the defendant, whether or not in charge, is a participant in the operation. *E.g.*, *Ybarra v. Spangard*, 25 Cal. 2d 486, 154 P.2d 687, 162 A.L.R. 1258 (1944); Annot., *Applicability of Res Ipsa Loquitur in Case of Multiple Medical Defendants — Modern Status*, 67 A.L.R.4th 544 (1989). *Ybarra* has been noted but not followed in Washington, *Younger v. Webster*, 9 Wn. App. 87, 90-91, 510 P.2d 1182, 90 A.L.R.3d 767 (1973); *Siegler v. Kuhlman*, 3 Wn. App. 231, 243 n.16, 473 P.2d 445 (1970), *rev'd*, 81 Wn.2d 448, 502 P.2d 1181 (1972), *cert. denied*, 411 U.S. 983 (1973); *Douglas v. Bussabarger*, 73 Wn.2d 476, 499, 438 P.2d 829 (1968) (Rosellini, J., dissenting), and we need not address it here.

[7]*In Kemalyan*, it was the plaintiff's rather than the defendant's evidence that was said to dispel an inference that would otherwise have existed, but the difference has no significance to the present discussion. Using the archaic jargon of res ipsa loquitur, *Kemalyan* said:

We have on a number of occasions held that a plaintiff can allege and attempt to prove specific acts of negligence on the part of the defendant and

*Hosp.*, 47 Cal. 2d 509, 519, 305 P.2d 36, 42 (1956); Annot., *Applicability of Res Ipsa Loquitur in Case of Multiple Medical Defendants — Modern Status*, 67 A.L.R.4th 544 (1989). As summarized in Annot., 67 A.L.R.4th at 557:

> [C]lear and uncontradicted testimony at trial that a certain defendant was not responsible for the injury to the plaintiff may dispel, as a matter of law, as to that defendant the inference of negligence which had earlier arisen under the doctrine of res ipsa loquitur.

In this case, the plaintiff did not present expert testimony, but he did introduce evidence that a sponge had been left in his body and that the defendant was the surgeon in charge of the operation. Viewed in isolation, that evidence is sufficient to support a reasonable inference that the defendant was negligent.[8]

Plaintiff's evidence, however, cannot be viewed in isolation. A purpose of summary judgment proceedings is to avoid useless trials. *Olympic Fish Prods., Inc. v. Lloyd*, 93 Wn.2d 596, 602, 611 P.2d 737 (1980); *Jacobsen v. State*, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977). At trial, it is all the evidence, not just plaintiff's evidence, that determines whether the case involves issues of fact for the jury.[9] CR 50(a). If cross motions for summary judgment have been made and the only inference reasonably available from all

---

still rely on *res ipsa loquitur*, and especially so when the allegation of specific acts of negligence is coupled with a general allegation of negligence on the defendant's part. This rule is subject to the qualification . . . that if plaintiff's evidence goes so far as to *fully* explain the cause or causes of the accident which injured him, he loses the right to rely on *res ipsa* . . ..
(Citations omitted.)

[8]This proposition appears to have been the basis of the trial court's ruling.

[9]In making this statement, we do not overlook that the sufficiency of evidence can also be tested at the end of the plaintiff's case in chief. The sufficiency determination made at that point, however, is merely preliminary. Its purpose is to ascertain whether the plaintiff has come forward with enough evidence to require that the defendant respond. It is at the conclusion of all the evidence that the court, if asked to do so, determines whether the evidence is sufficient to submit the case to the jury; and at that point the court is considering all the evidence, regardless of which party presented it.

the evidence is that a defendant was not negligent, that defendant should be dismissed from the action.

In this case, the evidence viewed as a whole does not support a reasonable inference that defendant Anderson failed to comply with the medical standard of care. It shows (1) that the nurses were responsible for counting sponges inserted and sponges retrieved, and for comparing the two counts; (2) that near the end of the operation, the nurses told the defendant that the two counts matched; (3) that a doctor in charge of an operation is in compliance with the medical standard of care if he or she, in the process of closing an incision, relies on a positive assertion by the nurses that the two counts match; and (4) that the defendant so relied. All of these propositions are virtually undisputed. The third one is expressly supported by Dr. Sola, *the expert selected by plaintiff*, as well as by Dr. Anderson, and at trial a lay jury would have "no rational ground for disbelieving their testimony". *Leonard v. Watsonville Comm'ty Hosp.*, 47 Cal. 2d at 519.

Nor does the evidence viewed as a whole support a reasonable inference that the medical standard of care agreed upon by Dr. Anderson and Dr. Sola differs from the legal duty of care. Assuming without holding that any difference between the legal duty of care and the medical standard of care can become a jury question in a proper case, *see Gates v. Jensen*, 92 Wn.2d 246, 253, 595 P.2d 919 (1979) (difference was jury question under prior statute), there is no evidence in this case from which to infer the complexity of the operation; the defendant doctor's other duties; the necessity or desirability of a doctor relying on sponge counts by the nurses; or any other fact from which a jury could find that a reasonably prudent doctor would not have relied on nurses to count sponges in this type of situation, notwithstanding the accepted medical standard of care. Consequently, a jury at trial could not reasonably infer

that defendant Anderson breached his legal duty of care despite complying with the medical standard of care.

In conclusion, the evidence does not support an inference that defendant Anderson was directly negligent. Therefore, he was entitled to summary judgment unless he was vicariously responsible for the negligence of the nurses.

## VICARIOUS LIABILITY

In contrast to direct liability, which is liability for breach of one's own duty of care, vicarious liability, sometimes called imputed negligence, W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* 499 (5th ed. 1984), is liability for breach of another's duty of care. *Stone v. Sisters of Charity*, 2 Wn. App. 607, 610, 469 P.2d 729 (1970); *Prosser and Keeton on Torts*, at 499; *John R. v. Oakland Unified Sch. Dist.*, 48 Cal. 3d 438, 442, 769 P.2d 948, 949, 256 Cal. Rptr. 766 (1989); *see Vanderpool v. Grange Ins. Ass'n*, 110 Wn.2d 483, 493, 756 P.2d 111 (1988) (Callow, J., dissenting). According to the Washington Supreme Court, vicarious liability exists so that the plaintiff will have maximum opportunity to be fully compensated. *Vanderpool*, 110 Wn.2d at 487. According to the Restatement of Agency, it exists because of the master's right of control. Restatement (Second) of Agency § 220 (1958). According to Prosser, its root is social policy concerning how risk shall be borne. *Prosser and Keeton on Torts*, at 500. According to the California Supreme Court, it exists because "the employer may spread the risk through insurance and carry the cost thereof as part of his costs of doing business." *John R. v. Oakland Unified Sch. Dist.*, 48 Cal. 3d at 450 (quoting *Johnston v. Long*, 30 Cal. 2d 54, 64, 181 P.2d 645 (1947)).

Plaintiff asserts that Washington has adopted the "captain of the ship" doctrine, and that this doctrine makes a head surgeon liable for the negligence of nurses who assist

in an operation. Plaintiff bases the argument on the following language from *McCormick v. Jones*, 152 Wash. at 511:

. . . [A] mere statement of the facts conclusively shows negligence, and that appellant, being the head surgeon in charge of this operation, is responsible therefor.

The "captain of the ship" doctrine is an adaptation of the "loaned servant" principle in the law of agency. *Kemalyan v. Henderson*, 45 Wn.2d 693, 700, 277 P.2d 372 (1954); *Thomas v. Hutchinson*, 442 Pa. 118, 125-26, 275 A.2d 23, 27 (1971). Its effect is to make the head surgeon vicariously liable for the negligence of a nurse or other assistant, notwithstanding that the nurse or assistant is employed by a different person or entity.

■ According to *Kemalyan v. Henderson*, *supra*, application of the captain of the ship doctrine depends on whether there is evidence supporting an inference that the doctor was directing or otherwise exercising control over the actions of the nurse or assistant. *Kemalyan*, 45 Wn.2d at 699-700. This proposition is consistent with the idea that vicarious liability depends on the master's right of control, as provided in the Restatement of Agency. Restatement (Second) of Agency § 220 (1958). It is also consistent with the idea of full compensation, for today both hospitals and doctors generally carry substantial liability insurance. *See Pierce v. Yakima Vly. Mem. Hosp. Ass'n*, 43 Wn.2d 162, 172, 260 P.2d 765 (1953) (hospitals carry substantial insurance). The question of control is normally for the jury, *Kemalyan*, 45 Wn.2d at 700, but as with all issues of fact, it can be disposed of on summary judgment when the evidence supports only one reasonable inference.

*Kemalyan* is not inconsistent with *McCormick v. Jones*, *supra*. Immediately before the language relied on by plaintiff, the *McCormick* court said that according to the testimony of several medical experts, there was no medical

purpose for the doctor to leave a foreign object in the patient's body. Thus, the doctor was directly liable for his own negligence. In contrast, the *Kemalyan* court was describing the doctor's vicarious liability for a nurse's negligence.

In the present case, the nurses were employed by the hospital rather than the defendant. The method by which they were to count sponges was established by the written policies of the hospital. There is no showing that the defendant gave any orders whatsoever concerning when or how to count the sponges. Rather, the nurses made a routine count, and when it was done, they orally informed the defendant that it was correct. Without any direction from him, they also filled out their written nursing record to reflect that fact. In short, nothing suggests that the defendant had any reason to doubt the information that they gave him, that he had any reason to assume control over when or how they counted the sponges, or that he ever assumed such control in any way. This evidence is insufficient to support the inference of control needed for the captain of the ship doctrine, and defendant Anderson is not vicariously responsible for the negligence of the nurses.

Reversed with directions to dismiss the complaint against defendant Anderson.

ALEXANDER, J., concurs.
WORSWICK, J. Pro Tem., concurs in the result.