[No. 43725-9-I. Division One. August 28, 2000.]

MARY LOU MILLER, *Appellant*, v. KARNY JACOBY, ET AL., *Respondents*.

*Marcus B. Nash* (of *Stafford Frey Cooper*), for appellant.

*Sherry H. Rogers, Marilee C. Erickson,* and *Katharine W. Brindley* (of *Reed McClure*); and *Lory R. Lybeck* and *Kara R. Masters* (of *Hoffman Hart & Wagner*), for respondents.

COLEMAN, J. — Mary Lou Miller sued two physicians and their employer for medical malpractice when a portion of a Penrose drain remained in her body following surgery. The drain was deliberately placed in the surgical wound to facilitate postoperative healing but was not completely removed before the patient was discharged. Miller offered no expert testimony to prove that the physicians' actions were negligent. After carefully reviewing the facts presented in this case, we conclude that without expert testimony, a layperson could not determine whether the physicians failed to act in a reasonably prudent manner. Therefore, we affirm the trial court's summary judgment dismissal of the claims.

## FACTS

On January 30, 1997, Miller underwent surgery for the removal of kidney stones. Dr. Robert Ireton performed the surgery at Northwest Hospital. Before completing the surgery, Dr. Ireton placed a one-half inch Penrose drain in the wound to facilitate postoperative healing. A Penrose drain is a soft piece of tubing placed in a wound to drain fluid.

Dr. Ireton ordered the drain to be removed some days following surgery. When the nurse on duty, Leslie Rockom, attempted to remove the drain, she felt resistance and told Miller that the drain "wouldn't come out," and that she would call a doctor to remove it. In a deposition, Rockom estimated that since 1965 she has cared for approximately 100 patients with Penrose drains and that probably only five drains resisted removal to the degree that she called in a physician. Miller later testified that she felt pain when Rockom tried to pull out the drain.

Dr. Karny Jacoby responded to Rockom's request for help in removing the drain. Rockom informed Dr. Jacoby that

she tried to pull out the drain and that she met resistance, causing pain. Dr. Jacoby then proceeded to remove the drain. She later testified that she had no difficulty in removing the drain and thus did not think it necessary to examine the drain in detail. Miller claimed, however, that after Dr. Jacoby removed the drain, she stated, "I hope I got it all."

Miller was discharged on February 3, 1997. She continued to suffer pain in her right side and swelling in her abdominal area. After two follow-up appointments, Dr. Ireton discovered on April 29, 1997, that a portion of the drain remained in the area of the surgical site. Miller consulted with a different physician for the removal of the drain, Dr. Robert Weissman, who performed a second surgery on May 23, 1997. According to Dr. Weissman's operative report, the end of the drain that he removed was angular, ragged, and irregular, "possibly representing where the drain broke off." Dr. Weissman indicated, however, that Miller's complaints of pain and swelling after the first surgery were probably unrelated to the presence of the drain.

On June 9, 1998, Miller sued Dr. Ireton, Dr. Jacoby, and Northwest Hospital for medical malpractice. Dr. Jacoby obtained a deposition from Dr. Wayne Weissman,[1] a urologist, in which he testified that Dr. Jacoby's actions in removing the drain conformed to the standard of care. He further testified that "[g]iven the fact that one end of the Penrose drain removed [in the second surgery] was ragged and irregular, it is highly likely that the Penrose drain was inadvertently sutured in place, deep within the wound, beneath the muscle layers." Dr. Weissman stated that suturing a Penrose drain in place "deep within the wound" did not comport with common practice. "It is the usual and customary practice to lay the Penrose drain in place, deep within the wound, and only secure the drain with a single superficial suture at the skin level. The procedure to

---

[1] Dr. Wayne Weissman served as an expert witness; Dr. Robert Weissman was the surgeon who removed the retained portion of the Penrose drain.

remove a Penrose drain involves cutting the skin suture and then pulling the drain out." Miller offered no expert testimony of her own, however, to support her claims.

The defendants moved for summary judgment, arguing that because Miller offered no expert testimony, she failed to raise a genuine issue of fact regarding whether the defendants had breached the standard of care. The court granted the motions and dismissed all of Miller's claims. Miller appeals.

## ANALYSIS

Miller argues that the trial court erred in dismissing her medical malpractice claims due to her failure to offer expert testimony. She contends that the evidence submitted was sufficient to support the conclusion that Drs. Ireton and Jacoby were negligent, relying on the rule that holds that a medical provider who inadvertently leaves a foreign object in a patient's body during surgery is negligent as a matter of law. This rule, however, does not apply in determining whether a physician was negligent in the performance of a surgical or postoperative procedure. In this case, expert testimony is needed to prove negligence.

■ We review a trial court's summary judgment order de novo. *Benjamin v. Washington State Bar Ass'n*, 138 Wn.2d 506, 515, 980 P.2d 742 (1999). Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.* at 515. In reviewing a summary judgment order, we consider the facts in the light most favorable to the nonmoving party. *Reid v. Pierce County*, 136 Wn.2d 195, 201, 961 P.2d 333 (1998).

To prove medical malpractice, a plaintiff must establish that her "injury resulted from the failure of a health care provider to follow the accepted standard of care[.]" RCW 7.70.030(1). In order to establish that the health care provider departed from this standard, the plaintiff must prove that "[t]he health care provider failed to exercise that

degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of Washington, acting in the same or similar circumstances[.]" RCW 7.70.040(1).

■ The standard of care in a medical malpractice action must generally be established through expert testimony. *Harris v. Robert C. Groth, M.D., Inc.*, 99 Wn.2d 438, 449, 663 P.2d 113 (1983). Although medical facts can be established with lay testimony if the facts are observable by a layperson's senses and describable without medical training, a layperson generally cannot observe or describe whether a particular medical practice is reasonably prudent. *Id.* at 449.

However, Washington courts have long followed the rule that a medical provider who introduces a foreign object into a patient's body during surgery and inadvertently fails to remove the object before the wound is closed can be negligent as a matter of law. *See, e.g., Bauer v. White*, 95 Wn. App. 663, 668, 976 P.2d 664, *review denied*, 139 Wn.2d 1004 (1999); *Van Hook v. Anderson*, 64 Wn. App. 353, 357-59, 824 P.2d 509 (1992); *McCormick v. Jones*, 152 Wash. 508, 511, 278 P. 181 (1929). "This is because cases involving 'objects lost in the patient's body probably constitute the clearest examples of malpractice.'" *Bauer*, 95 Wn. App. at 667 (quoting Philip A. Talmadge & Ann Marie Neugebauer, *A Survey of Washington Medical Malpractice Law*, 23 GONZ. L. REV. 267, 289 (1987-88)). In cases where an object is inadvertently left in a patient during surgery, the medical facts are generally observable to a layperson and expert testimony is therefore not required. *See Bauer*, 95 Wn. App. at 667.

Miller relies on two recent cases to support her argument that this rule applies to her case. In *Van Hook*, 64 Wn. App. at 356, a sponge was inadvertently left in the plaintiff's body during surgery. Two nurses were responsible for counting sponges inserted and retrieved during the surgery. In holding that the surgeon performing the operation was

not directly or vicariously responsible for the nurses' failure to account for all of the sponges, the court assumed that the nurses' acts constituted negligence as a matter of law. *Id.* at 357-59. In *Bauer*, 95 Wn. App. at 665, a metal pin was inadvertently left in the plaintiff's leg during knee surgery. Finding that there was no evidence that any particular medical provider who attended the surgery was responsible for removing the pins, the court held that the surgeon in charge of the operation was negligent as a matter of law, explaining that its holding was "consistent with Washington's long history of requiring a physician, or at least someone in the operating room, to account for all foreign objects." *Id.* at 668.

■ ■ The rule applied in the *Van Hook* and *Bauer* decisions is not, however, applicable to this case. In *Van Hook* and *Bauer*, the medical providers held to be negligent as a matter of law had a duty to account for foreign objects used during surgery and to remove the objects before closing the wound. Expert testimony is certainly not required to understand that objects placed in the body during surgery must be properly accounted for and removed at the completion of surgery. In both of the cases cited by the plaintiff, the objects remained in the patients' bodies because the medical providers failed to perform this duty.

Here, in contrast, the respondent physicians did not have a duty to account for and remove the drain during surgery. Dr. Ireton deliberately positioned and left the drain in place after the wound was closed in order to drain the wound following surgery. Dr. Jacoby attempted to remove the drain during a separate, postoperative medical procedure. Although she did not remove the entire drain, this was not because she had failed to account for it. Dr. Jacoby may have been negligent in the manner and method of removal, but that determination can be made only by evaluating the standard of care required of a reasonably prudent physician. To hold otherwise would mean that anytime a small piece of catheter or drain flaked off and remained in the patient's body, causing injury, the physician who attempted

to remove the drain would be liable as a matter of law. This is contrary to the rule requiring expert testimony to establish medical negligence. Such testimony is necessary to set forth the appropriate standard of care under these circumstances.

Likewise, a layperson could not determine, without expert testimony, whether Dr. Ireton's actions in placing the drain in Miller's body were within the standard of care. Miller theorized that Ireton acted negligently by suturing the drain in place during surgery. The record, however, contains no direct evidence that Dr. Ireton sutured the drain in place. Even assuming for purposes of summary judgment that Miller has raised an inference that Ireton inadvertently sutured the drain in place, Miller must still prove that Ireton's actions were negligent, and expert testimony is needed to prove that claim. Although Dr. Weissman attested that it is not the usual and customary practice to suture a drain in place within the wound, he did not address whether a reasonably prudent surgeon, acting within the standard of care, could nonetheless inadvertently suture a drain in place. Opining that Dr. Ireton's procedure did not comport with common practice is not the equivalent of testifying that his procedure violated the standard of care. In fact, Dr. Weissman did not testify regarding the standard of care, and the only evidence addressing this question contradicts Miller's position. In his own declaration, Dr. Ireton attested that "an unintended or inadvertent suture . . . does not represent or establish negligence. In circumstances such as those presented during Ms. Miller's surgery, an inadvertent suture can occur without any deviation from reasonable, prudent and appropriate medical care." Without additional expert testimony, a layperson could not conclude that a surgeon who inadvertently sutured a drain in place was negligent. That conclusion would require knowledge of surgical practices and procedures, which the average layperson does not possess.

■ As for Dr. Jacoby, Miller argued that she breached the standard of care by not noticing or informing her that a

portion of the drain remained in her body. But from the evidence presented, a layperson also could not have concluded that Dr. Jacoby acted imprudently or unreasonably. Dr. Jacoby attested that she had no reason to suspect that the drain was sutured under the skin. Neither the operative notes nor the progress notes mentioned that the drain had been sutured. And although Rockom experienced unusual resistance in attempting to remove the drain, Dr. Jacoby had no difficulty. Without any knowledge of medical practices, a layperson could not conclude that when a doctor feels no resistance in removing a drain and there is no indication in the operative or progress notes that the drain has been sutured in place, the doctor should nonetheless inspect the drain in detail. Moreover, the only expert testimony contained in the record that addresses the issue directly contradicts Miller's theory. Dr. Wayne Weissman testified that Dr. Jacoby had no reason to examine the drain in detail "as there was no indication of a problem in removing the drain. Since Dr. Jacoby did not know the drain tore, she could not inform the patient of a problem." In Dr. Weissman's opinion, Dr. Jacoby conformed to the standard of care of a reasonably prudent urologist when she removed the drain.

■ Finally, Miller argues that the evidence is sufficient to prove that the respondents were negligent under the res ipsa loquitur doctrine. The doctrine of res ipsa loquitur recognizes that an occurrence may be of such a nature that the occurrence is, by itself, sufficient to establish negligence on the part of the defendant, without any further proof. *Tinder v. Nordstrom, Inc.*, 84 Wn. App. 787, 791, 929 P.2d 1209 (1997) (citing *Morner v. Union Pac. R.R.*, 31 Wn.2d 282, 291, 196 P.2d 744 (1948)). For the doctrine to apply, the plaintiff must prove in the abstract that there is a reasonable probability that the event producing the injury would not have occurred in the absence of negligence. *See Tinder*, 84 Wn. App. at 792-93 ("The mere occurrence of an accident and an injury does not necessarily infer negligence."). Here, however, Miller has failed to show that the circumstances of

her injury support such an inference. As discussed above, a layperson would not be able to determine, without expert testimony, that Drs. Ireton and Jacoby departed from the standard of reasonable, prudent, and appropriate medical care. Thus, the doctrine of res ipsa loquitur does not apply.

Because Miller offered no contrary expert testimony to support her claim that the respondents breached the standard of care, we conclude that the trial court did not err in dismissing her claims on summary judgment, and we affirm.

GROSSE, J., concurs.

APPELWICK, J. (dissenting) — Dr. Robert Ireton placed a Penrose drain in Mary Lou Miller. It is undisputed that the drain placement was to be temporary and that it was to be removed in its entirety. Dr. Karny Jacoby, caring for Miller in Dr. Ireton's stead and following Dr. Ireton's written direction that the drain be removed, attempted to remove the drain. It is undisputed that the drain broke and a portion remained in Miller's body. A subsequent surgery was required to remove the piece of drain which remained inside of Miller.

The majority opinion relies on RCW 7.70.030(1), 7.70.040(1), and *Harris v. Robert C. Groth, M.D., Inc.*, 99 Wn.2d 438, 449, 663 P.2d 113 (1983) for the proposition that medical malpractice must be proven through expert testimony establishing a violation of the appropriate standard of care. The opinion states that Miller has failed to hire an expert witness who will tell the court that either Dr. Ireton negligently placed the Penrose drain or that Dr. Jacoby negligently removed or failed to remove the Penrose drain or both. Without the expert testimony, her claim fails. This is the general rule. If the general rule applies, no malpractice can be proven, and Miller is on her own and out-of-pocket for the additional surgery to remove the foreign object left inside her.

However, this case is not about the general rule. A case

involving a foreign object left in the body is a special exception to the general rule. The case is controlled by the opinion in *Bauer v. White*, 95 Wn. App. 663, 976 P.2d 664, *review denied*, 139 Wn.2d 1004 (1999). There, Judge Sweeney framed the question in the case as follows:

> This medical malpractice case pits the apparent categorical requirement of RCW 4.24.290 and RCW 7.70.040 for expert testimony to support a medical negligence claim against the long-standing Washington rule that unintentionally leaving a foreign object in a surgical patient is negligence per se. . . . The question here is whether a patient must present an expert medical opinion that unintentionally leaving a foreign object in a surgical patient violates the standard of care for physicians in this state. We conclude that she need not, and reverse and remand for trial on the issues of causation and damages.

*Bauer*, 95 Wn. App. at 664 (citation omitted). The question in the case before us is identical. The answer should be identical.

Miller has stated facts uncontroverted: a portion of a Penrose drain was not removed from the body; the portion of the Penrose drain was a foreign object; and a portion of the Penrose drain was *inadvertently left* in her body. No expert testimony was necessary; the violation of the standard of care was established as a matter of law:

> Simply put, it is not reasonable prudence to unintentionally leave a foreign substance in a surgical patient.

*Id.* at 668. The summary judgment must be reversed.

Contrary to the opinion of the majority, it is of no consequence at summary judgment that the defendants had experts to testify to standard of care issues for either or both of them. Such observations may be important in apportioning liability between the treating physicians, but they are valueless as to liability to the plaintiff. That testimony is not sufficient to overcome the inference of negligence which flows from a showing that a foreign object was inadvertently left in the body.

> Absent expert testimony [for the plaintiff], evidence is sufficient to support an inference that negligence was the defen-

dant's when a foreign object is left in the patient and the defendant is either (a) the surgeon in charge of the operation, or (b) a doctor participating in the operation under circumstances warranting a reasonable inference that he or she had the responsibility to remove the object. . . . *Contrary evidence supporting an inference that negligence was not the defendant's often will not dispel the inference that it was; even if such evidence be "weighty, competent and exculpatory," it will merely generate an issue of fact for the jury to decide under proper instructions.*

(Emphasis added.) *Van Hook v. Anderson*, 64 Wn. App. 353, 359-60, 824 P.2d 509 (1992) (footnotes and citations omitted).

It is also of no consequence that the initial placement of the Penrose drain was intentional. From the time Dr. Jacoby attempted removal of the drain, pursuant to Dr. Ireton's written direction, a portion of the drain inadvertently remained in Miller. In *Van Hook* the sponges were intentionally placed in the patient temporarily. It is the fact that the sponge was inadvertently left in Van Hook and that the drain was inadvertently *left* in Miller that the *Bauer* court says controls. The *Bauer* court would not only refuse the defense motion for summary judgment, it would send this case to the jury:

Once it is established that the object was inadvertently left inside the patient's body (i.e., negligence), the patient is entitled to any damages that were proximately caused from such negligence.

. . . .

A patient has the right to have the foreign object removed from his or her body, even if removal is psychologically motivated. Under these circumstances, the physician's negligence is the "unequivocal proximate cause of some damage," including the additional surgical procedure. A physician may also be liable for pain and suffering caused by the removal of the object.

*Bauer*, 95 Wn. App. at 669 (citations omitted). Clearly, *Bauer* contemplates Miller defeats summary judgment *and* wins some damages.

The majority opinion concedes that "[e]xpert testimony is certainly not required to understand that objects placed in the body during surgery must be *properly accounted for and removed* at the completion of surgery." (Emphasis added.) Majority opinion at 262. It is argued that *Bauer* does not apply since Dr. Jacoby accounted for the Penrose drain, because she removed it. The majority misapplies the rule. Can there be any doubt that, if the nurse in *Van Hook* removed ten sponges instead of nine, but one sponge had torn and a fragment remained inside the patient, the resulting liability would have been the same? Even if Dr. Jacoby "accounted for" the one drain put in place, she failed to properly remove the drain. She inadvertently left two inches of the drain in Miller. A foreign object inadvertently remained in the patient, *Bauer* controls, and no expert testimony on behalf of the patient is required.

Finally, the majority opinion suggests that the wound had been closed at the time of insertion of the Penrose drain, and that this fact makes the removal of the drain a postsurgical procedure not covered by *Bauer* or *Van Hook*. No law is cited for this proposition. And factually, the closing of the surgical wound could not be completed until the Penrose drain was taken out of the wound. Complete removal of the drain would have completed the surgical procedure. The moment of Dr. Jacoby's incomplete removal of the drain resulted in a foreign object that was placed in the body intentionally and temporarily during surgery, then becoming a foreign object inadvertently and permanently left in the patient at the completion of surgery.

The majority's position cannot be reconciled with *Bauer*. Therefore, I respectfully dissent. The summary judgment should be reversed.

Review denied at 142 Wn.2d 1027 (2001).