[No. 17369-1-III.   Division Three.   May 13, 1999.]

MARGARET BAUER, ET AL., *Appellants*, v. TRAVIS E. WHITE, M.D., *Respondent.*

*Kaiser & Douglass*, by *Keith S. Douglass*; and *Patrick K. Fannin*, for appellants.

*Keefe, King & Bowman*, by *Dan W. Keefe*, for respondent.

SWEENEY, J. — This medical malpractice case pits the apparent categorical requirement of RCW 4.24.290 and RCW 7.70.040 for expert testimony to support a medical negligence claim against the long-standing Washington rule that unintentionally leaving a foreign object in a surgical patient is negligence per se. *McCormick v. Jones*, 152 Wash. 508, 278 P. 181, 65 A.L.R. 1019 (1929). Dr. Travis White inadvertently left a 2¹/₄-inch pin in Margaret Bauer's tibia. Dr. White's expert opined that no standard of care required him to account for the pins following surgery. Mrs. Bauer did not respond with a contrary expert opinion. The trial judge granted Dr. White's summary judgment motion and dismissed the complaint. The question here is whether a patient must present an expert medical opinion that unintentionally leaving a foreign object in a surgical patient violates the standard of care for physicians in this state. We conclude that she need not, and reverse and remand for trial on the issues of causation and damages.

## FACTS

<u>History.</u> Mrs. Bauer suffered from degenerative arthritis

and a torn medial meniscus in her left knee. Dr. White performed a knee arthroplasty on April 8, 1992. He replaced Mrs. Bauer's left knee with a prosthetic knee (tibial prosthesis).

In order to position the tibial prosthesis, Dr. White positioned a provisional template over her knee. To do so, he drilled holes in the leg and inserted 2¼-inch metal positioning pins to hold a drill. These pins were not intended to remain in the patient. Dr. White was responsible for the placement of the pins, but an assisting physician and two surgical technicians had access to the surgical field.

Once aligned, Dr. White drilled a one-half inch canal down the shaft of the tibia into the medullary canal of the tibia. An extension of the tibial prosthesis rested in this canal. He then permanently glued the prosthesis into place.[1]

Following the surgery and after the wound was closed, Dr. White x-rayed Mrs. Bauer's leg. He discovered that one of the metal positioning pins had fallen into the tibial medullary canal. The glue holding the prosthesis had already hardened. Dr. White did not count the pins before closing the surgical wounds. He does not know how the pin ended up in Mrs. Bauer's leg. And more than one person in the operating room handled the positioning pins.

Later Mrs. Bauer began to complain of pain, swelling, and heat in her left knee and tibia. She attributed the symptoms to the pin; Dr. White disagreed. She asked him to remove the pin. He did on December 16, 1992.

Mrs. Bauer continued to complain about her leg even after Dr. White removed the pin. He evaluated each complaint but could not find any objective symptoms other than those he would normally expect to follow arthroplasty surgery. He also referred Mrs. Bauer to seven other physicians for evaluation. None could find any problem attributable to the pin or the surgery to remove it.

---

[1]The record does not shed much light on the knee arthroplasty procedure. But the parties basically agree on this procedure.

*Procedure.* Mrs. Bauer and her husband sued Dr. White. They alleged negligence. The Bauers sought compensation for the second surgery, for pain and suffering associated with the second surgery and for the scar from the second surgery.

Both parties moved for summary judgment. Dr. White supported his motion with the deposition of Dr. William Lanzer. Dr. Lanzer did not know of any surgical team that counted positioning pins. He therefore concluded that Dr. White did not breach any standard of care because none exists. The Bauers argued that Dr. White was negligent as a matter of law. The Bauers' expert, Dr. Richard Goodman, responded that "it is a deviation from the standard of care for a physician to [unintentionally] leave behind foreign objects . . . ." But he did not know the standard of care for orthopedic surgeons in Washington.

The trial court granted Dr. White's motion for summary judgment because the Bauers failed to refute Dr. White's expert testimony on the standard of care.

## DISCUSSION

█ *Standard of Review.* The question here is one of law. Must a patient present an expert medical opinion that unintentionally leaving a foreign body in a surgical patient violates the standard of care for physicians in this state to withstand a motion for summary judgment? Because the question is one of law, review is de novo. *Silves v. King,* 93 Wn. App. 873, 878, 970 P.2d 790 (1999).

█ *Statutory Requirements.* The plaintiff must "prove by a preponderance of the evidence that the defendant or defendants failed to exercise that degree of skill, care, and learning possessed at that time by other persons in the same profession, and that as a proximate result of such failure the plaintiff suffered damages . . . ." RCW 4.24.290. Because of this requirement, RCW 7.70.040(1) requires proof that:

> The health care provider failed to exercise that degree of

care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of Washington, acting in the same or similar circumstances[.]

Appellate courts in this state have interpreted these statutes as requiring medical testimony to establish the standard of care and proximate cause in medical malpractice actions. *Harris v. Groth*, 99 Wn.2d 438, 449, 663 P.2d 113 (1983); *Morinaga v. Vue*, 85 Wn. App. 822, 831-32, 935 P.2d 637, *review denied*, 133 Wn.2d 1012 (1997). Washington, however, has long recognized that unintentionally leaving a foreign object in a patient's body is negligence. *Conrad v. Lakewood Gen. Hosp.*, 67 Wn.2d 934, 936-37, 410 P.2d 785, 10 A.L.R.3D 1 (1966); *McCormick*, 152 Wash. at 510-11; *Wynne v. Harvey*, 96 Wash. 379, 384, 165 P. 67, *aff'd*, 99 Wash. 693, 168 P. 896 (1917). This is because cases involving "objects lost in the patient's body probably constitute the clearest examples of malpractice." Philip A. Talmadge & Ann Marie Neugebauer, *A Survey of Washington Medical Malpractice Law*, 23 GONZ. L. REV. 267, 289 (1987-1988).

■ Expert testimony is necessary only if the medical facts are not observable to the lay person. *Harris*, 99 Wn.2d at 449 (quoting *Bennett v. Department of Labor & Indus.*, 95 Wn.2d 531, 533, 627 P.2d 104 (1981)). Here, the medical facts are observable to a lay person.

Negligence. Dr. White relies on *Van Hook v. Anderson*[2] for the proposition that the lead surgeon is not responsible when a foreign object is inadvertently left in a patient. *Van Hook* is easily distinguished though. There, hospital policy required that nurses account for all sponges. The physicians and surgical nurses all agreed this was the policy. Following the surgery but before closure, the nurses told the surgeon (he asked) that all sponges had been accounted for. They had not. So the question in *Van Hook* was whether the surgeon either directly or vicariously as "captain of the

[2]64 Wn. App. 353, 824 P.2d 509 (1992).

ship" was liable for leaving the sponges in Mr. Van Hook. The court concluded that he was not liable because of the unrefuted testimony that the sponge count was the nurses' responsibility. And they, in fact, had told the physician that all sponges had been accounted for.

Contrast this with the evidence here. Dr. White's expert testified that he was not aware of any standard which would require a surgeon to account for the pins used in Mrs. Bauer's surgery. Several of the surgical assistants in the operating room could have handled the pins. No one knew how the pin had been inadvertently left in Mrs. Bauer. Unfortunately, when everyone is responsible, no one is responsible. A policy which would make everyone responsible, and therefore no one specifically responsible, is not consistent with Washington's long history of requiring a physician, or at least someone in the operating room, to account for all foreign objects.

The standard of care in Washington is reasonable prudence. The standard is not limited to the standard practiced by those in the profession. *Harris*, 99 Wn.2d at 447. This is because it is society and the patients to whom physicians are responsible, not their fellow practitioners. *Id.* at 445. The standard of care for physicians practicing in the specialty under scrutiny, here orthopedics, is evidence of, but is not conclusive of, the reasonable prudence standard. *Van Hook v. Anderson*, 64 Wn. App. 353, 358, 824 P.2d 509 (1992).

The applicable standard for inadvertently leaving a foreign object in a patient is both clear and long standing:

> [W]hen a surgeon inadvertently introduces into a wound a foreign substance, closes up the wound, leaving that foreign substance in the body, there being no possibility of any good purpose resulting therefrom, the act constitutes negligence.

*McCormick v. Jones*, 152 Wash. 508, 511, 278 P. 181, 65 A.L.R. 1019 (1929). Simply put, it is not reasonable prudence to unintentionally leave a foreign substance in a surgical patient.

Dr. White attempts to distinguish *Conrad, McCormick*, and *Wynne* because the object went undiscovered for a longer period of time in those cases.

> Moreover, *Conrad, Wynne,* and *McCormick* are further distinguished in that foreign objects were inadvertently left in these patients, *undetected,* anywhere from six weeks to three months following the initial surgery. It was this length of time which caused the resultant infections and complications suffered by these patients, and which formed the basis of their lawsuits.

Resp't's Br., at 17. This is not a material distinction. The question is whether the foreign object was inadvertently left, not for how long. Once it is established that the object was inadvertently left inside the patient's body (i.e., negligence), the patient is entitled to any damages that were proximately caused from such negligence. RCW 4.24.290; *McCormick,* 152 Wash. at 514-15.

Proximate Cause. The next step in the plaintiffs' required chain of proof is more difficult.

■ A medical malpractice plaintiff who proves a violation of the standard of care and proximate cause may receive compensatory damages to restore her to the condition she enjoyed prior to the incident complained of in the lawsuit. Talmadge & Neugebauer, *supra* at 277. Generally issues of proximate cause and resulting damages are for a jury. *Swope v. Sundgren,* 73 Wn.2d 747, 749-50, 440 P.2d 494 (1968).

■ A patient has the right to have the foreign object removed from his or her body, even if removal is psychologically motivated. *Martin v. Rosomoff,* 370 So. 2d 1228, 1229 (Fla. Dist. Ct. App. 1979). Under these circumstances, the physician's negligence is the "unequivocal proximate cause of some damage," including the additional surgical procedure. *Id.* at 1229-30. A physician may also be liable for pain and suffering caused by the removal of the object. *McCormick,* 152 Wash. at 514-15.

The Bauers must establish that injury proximately

resulted from leaving the pin in Mrs. Bauer's leg. Clearly, on the record before us, having left the pin in Mrs. Bauer's leg, Dr. White was not negligent in failing to immediately remove it. His experts opined that the pin was in a position where it would not have affected the function of Mrs. Bauer's leg, nor should it have caused discomfort. But she was entitled to have it removed. And she likely incurred some pain and suffering from the removal of the pin, outside of that attributable to the knee arthroplasty.

We reverse and remand for trial on the issues of causation and damages.

KURTZ, A.C.J., and KATO, J., concur.

Review denied at 139 Wn.2d 1004 (1999).