[No. 18163-4-III.   Division Three.   June 13, 2000.]

SUZAN BERGER, *Appellant*, v. JOHN SONNELAND, *Respondent*.

---

*Brad E. Smith* (of *Huppin Ewing Anderson & Paul, P.S.*), for appellant.

*Brian T. Rekofke* (of *Witherspoon, Kelley, Davenport & Toole, P.S.*), for respondent.

KURTZ, C.J. — During her initial appointment with Dr. John Sonneland, Suzan Berger revealed information about her medical and personal history. When questioned about her personal history, Ms. Berger said that she had previously been married to Daniel Hoheim, a physician in Montana. She described her relationship with her ex-husband as "extremely strained." After meeting with Ms. Berger, Dr. Sonneland contacted Dr. Hoheim and discussed Ms. Berger's use of pain medicines. Based on information provided by Dr. Sonneland, Dr. Hoheim filed a motion in a Montana court seeking to modify the custody orders relating to the couple's two children.

Ms. Berger filed this action seeking damages, including emotional damages, for Dr. Sonneland's alleged breach of physician-patient confidentiality. Applying case law related to the tort of negligent infliction of emotional distress, the trial court granted summary judgment in favor of Dr. Sonneland. We reverse concluding that a tort action exists under RCW 7.70.030(1) for damages resulting from the unauthorized disclosure of confidential information related to health care and obtained within the physician-patient relationship. We further conclude that the case law related to the tort of negligent infliction of emotional distress does not apply to such an action.

## FACTS

On July 1, 1993, Ms. Berger, then age 34, was examined by Dr. Sonneland, a vascular surgeon, in Spokane, Washington. Ms. Berger complained of abdominal pain, chronic diarrhea, severe dumping syndrome, nausea, vomiting and

a 40-pound weight loss. As part of his examination, Dr. Sonneland took an extensive medical history. Ms. Berger told Dr. Sonneland that she started having symptoms at about age 22 and eventually required multiple surgeries that were performed at the University of Michigan Hospital. Ms. Berger identified Dr. Ekhauser of the University of Michigan Hospital as her most recent medical provider. Ms. Berger also signed an authorization permitting Dr. Sonneland to obtain records from the University of Michigan Hospital.

As part of his examination, Dr. Sonneland also took Ms. Berger's personal and social history. Ms. Berger told Dr. Sonneland of her recent marriage to her second husband, John Berger. Having been informed that Ms. Berger had two children, Dr. Sonneland questioned her about prior marriages. Ms. Berger identified a Montana physician named Daniel Hoheim as her ex-husband. Ms. Berger also informed Dr. Sonneland that her relationship with her ex-husband was "extremely strained." Contrary to the assertions in Dr. Sonneland's brief, the record does not indicate that Ms. Berger identified Dr. Hoheim as a medical provider or that she informed Dr. Sonneland that Dr. Hoheim had previously written pain medication prescriptions for her. Ms. Berger did not give Dr. Sonneland permission to contact Dr. Hoheim.

During her visit with Dr. Sonneland, Ms. Berger said that she had previously taken a narcotic pain medicine called Tylox®. Immediately after this appointment, Dr. Sonneland contacted Dr. Hoheim and discussed Ms. Berger's use of narcotic pain medicines. Dr. Hoheim then filed an affidavit and motion in a Montana court seeking to modify the custody orders related to their two children. Dr. Hoheim alleged that Ms. Berger had previously abused narcotic pain medicine and that Tylox® had been her "drug of choice." Dr. Hoheim stated that Ms. Berger had requested Tylox® from Dr. Sonneland and that Dr. Sonneland had

written a prescription for her.[1] Dr. Hoheim expressed concern about "Suzan's probable drug abuse and addiction." Dr. Hoheim also requested the Montana court to waive any further physician-patient privilege between Dr. Sonneland and Ms. Berger so that Dr. Sonneland could be deposed. Ms. Berger hired an attorney in Montana to resolve these issues.

Ms. Berger filed a complaint against Dr. Sonneland alleging four causes of action: (1) breach of confidentiality; (2) breach of fiduciary relationship; (3) breach of the Washington Uniform Health Care Information Act; and (4) medical malpractice under chapter 7.70 RCW. As to the first three causes of action, Dr. Sonneland moved for summary judgment arguing that Washington's medical malpractice statute, RCW 7.70.010, subsumed all civil causes of action for injuries allegedly resulting from acts or omissions of a health care provider. In response, Ms. Berger voluntarily dismissed her claims for breach of confidentiality, breach of fiduciary relationship, and breach of the uniform health care information act.

Dr. Sonneland then moved for summary judgment on the remaining cause of action, arguing that Ms. Berger had failed to present a prima facie case of medical malpractice under chapter 7.70 RCW. In response to Dr. Sonneland's motion, Ms. Berger abandoned her claim for "medical/ physical damages" and represented that her cause of action was for breach of the physician-patient relationship resulting in emotional damages and litigation costs in Montana. Ms. Berger also submitted the declaration of her expert witness, Dr. Thomas McCormick. Dr. McCormick is a medical ethicist who teaches at the University of Washington School of Medicine. Dr. McCormick holds a doctorate in ministry specializing in medical ethics and human values; he is not a medical doctor and is not licensed to practice medicine.

In response to Ms. Berger's statement that she was

---

[1] The parties disagree as to whether Ms. Berger requested Tylox® from Dr. Sonneland and the limited record here does not resolve this question.

abandoning her claim for "medical/physical damages," Dr. Sonneland filed a reply brief asserting that Ms. Berger's claim should fail because she lacked the objective symptomatology required for an emotional distress claim. Ms. Berger then submitted her own declaration detailing her emotional and monetary damages. Ms. Berger stated that she incurred litigation costs in Montana and that she experienced insomnia, stress, and physical symptoms as a result of Dr. Sonneland's disclosure of information to Dr. Hoheim. She also explained that her multiple medical problems require her to have frequent contact with medical providers, but now each interaction caused her to become fearful that confidential information would be disclosed. Additionally, she no longer trusts physicians and hesitates to seek medical treatment.

The court granted Dr. Sonneland's motion for summary judgment based on the absence of damage evidence. The court reasoned that chapter 7.70 RCW supported a cause of action for breach of physician-patient confidentiality, but concluded that Ms. Berger had failed to present a prima facie case because she failed to establish, through medical testimony, any objective symptoms of emotional distress. In reaching its decision, the court relied on case law related to negligent infliction of emotional distress. Ms. Berger moved for reconsideration, urging the court to apply invasion of privacy principles rather than principles related to the tort of negligent infliction of emotional distress. The court denied this motion concluding that the claim for invasion of privacy was untimely. Ms. Berger appeals.

## ANALYSIS

The issue is whether the superior court erred by dismissing Ms. Berger's remaining cause of action for breach of physician-patient confidentiality under RCW 7.70.030(1) because she failed to establish a prima facie case. To resolve this question, we must decide whether chapter 7.70 RCW authorizes an action for breach of physician-patient confidentiality and, if so, we must define the nature of this cause of action.

*Standard of Review.* Summary judgment is proper only when the pleadings, depositions, and admissions in the record, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). All facts and reasonable inferences are considered most favorably to the nonmoving party. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

■■ *Injury Resulting from Health Care.* Whenever an injury occurs as a result of health care, the action for damages for that injury is governed exclusively by chapter 7.70 RCW. *Branom v. State*, 94 Wn. App. 964, 968-69, 974 P.2d 335, *review denied*, 138 Wn.2d 1023 (1999). The Legislature's declaration of policy, RCW 7.70.010, sweeps broadly and requires plaintiffs to proceed under chapter 7.70 RCW if seeking recovery for "injuries resulting from health care," regardless of whether the cause of action is based in "tort, contract, or otherwise." RCW 7.70.010. While the term "health care" is not defined in chapter 7.70 RCW,[2] Washington courts have construed the term to mean " 'the process in which [a physician is] utilizing the skills which he had been taught in examining, diagnosing, treating or caring for the plaintiff as his patient.' " *Branom*, 94 Wn. App. at 969 (quoting *Estate of Sly v. Linville*, 75 Wn. App. 431, 439, 878 P.2d 1241 (1994)).

Dr. Sonneland argues that any cause of action based on an alleged breach of physician-patient confidentiality is separate and distinct from claims recognized under chapter 7.70 RCW. Specifically, he asserts Ms. Berger's claim is not actionable under chapter 7.70 RCW because any injuries sustained by Ms. Berger were not the result of "health care." To support this position, Dr. Sonneland relies on *Linville*.

In *Linville*, Mr. Sly's widow brought suit against Dr.

---

[2] "Health care" is defined in RCW 70.02.010(4) as "any care, service, or procedure provided by a health care provider: (a) To diagnose, treat, or maintain a patient's physical or mental condition."

Linville for negligent representations concerning the quality of care rendered to her husband by another physician. Dr. Linville argued that because his statements were made during the course of the physician-patient relationship, they were related to health care and, consequently, the action against him was barred by the eight-year maximum statute of limitations for damages for injuries occurring as a result of health care.[3] Rejecting Dr. Linville's position, the *Linville* court determined that Dr. Linville's breach of duty arose during discussions about the other physician and did not arise while Dr. Linville was using " 'the skills which he had been taught in examining, diagnosing, treating or caring for the plaintiff as his patient.' " *Linville*, 75 Wn. App. at 439 (quoting *Tighe v. Ginsberg*, 146 A.D.2d 268, 271, 540 N.Y.S.2d 99, 101 (1989)). The *Linville* court concluded that RCW 7.70.010 did not apply because "[t]he fact that the misrepresentations were made during the course of the physician/patient relationship does not automatically render them 'health care' for the purposes of the statute of limitation." *Linville*, 75 Wn. App. at 440.

There is a significant difference between *Linville* and the case before us. *Linville* involved misrepresentations made by a physician to a patient within the physician-patient relationship rather than a physician's disclosure to others of confidential information provided by the patient as part of the patient interview process. Of greater importance, the *Linville* court did not address the confidential nature of the physician-patient relationship or the question of whether chapter 7.70 RCW supports a cause of action for the unauthorized disclosure of confidential information obtained by the physician while rendering health care to a patient. Even though the holding in *Linville* is limited, *Linville* suggests that a physician's unauthorized disclosure of confidential information is not actionable under chapter 7.70 RCW if (1) the confidential information was obtained outside the physician-patient relationship, or (2) the confidential information was obtained within the phy-

---

[3] RCW 4.16.350(3).

sician-patient relationship but was unrelated to health care. We agree.

Here, Dr. Sonneland saw Ms. Berger as a new patient. As part of his interview with Ms. Berger, Dr. Sonneland learned the identity of her ex-husband and obtained confidential information concerning her prior use of and/or present need for pain medicine. Dr. Sonneland then contacted Dr. Hoheim, who subsequently filed an affidavit stating that Ms. Berger had requested narcotic pain medicine from Dr. Sonneland and that Dr. Sonneland had written a prescription for her. Considered in the light most favorable to Ms. Berger, these facts are sufficient to establish that Dr. Sonneland disclosed confidential information related to health care and obtained within the physician-patient relationship. Because Ms. Berger seeks damages for injury occurring as the result of health care, her cause of action must proceed under chapter 7.70 RCW.

*Violation of a Standard of Care.* Once it is established that an injury occurred as the result of health care, the question of whether the injury is actionable is governed by RCW 7.70.030. The Legislature has defined three bases for recovery under RCW 7.70.030: (1) violation of the standard of care, (2) lack of informed consent, and (3) a promise that the injury suffered would not occur. Ms. Berger alleges a cause of action under subsection (1) of the statute, a violation of the standard of care. A plaintiff proceeding under this subsection must prove, by a preponderance of the evidence, that the injury resulted from the failure of a health care provider to follow the accepted standard of care.

Although Dr. Sonneland maintains that there is no cause of action under chapter 7.70 RCW for breach of physician-patient confidentiality by physicians, he does not appear to dispute that the accepted standard of care includes a duty to maintain the confidentiality of the physician-patient relationship. Physicians recognize the importance of confidentiality and assume that it is an integral part of their relationships with patients and other treating physicians. All physicians take the Hippocratic oath that honors the

confidentiality of information obtained from a patient. *Carson v. Fine*, 123 Wn.2d 206, 220, 867 P.2d 610 (1994) (citing *Orr v. Sievert*, 162 Ga. App. 677, 678, 292 S.E.2d 548, 549 (1982)). This close confidential relationship is also recognized by the ethical guidelines of the American Medical Association. *Loudon v. Mhyre*, 110 Wn.2d 675, 679 n.3, 756 P.2d 138 (1988). The American Medical Association has incorporated this duty in its Principles of Medical Ethics. Principle IV provides in part: "A physician shall respect the rights of patients . . . and shall safeguard patient confidences within the constraints of the law." *Id*.

The Washington Legislature has also acknowledged the confidential nature of the physician-patient relationship by adopting the Washington Uniform Health Care Information Act, chapter 70.02 RCW, and by establishing the physician-patient privilege, RCW 5.60.060(4). The physician-patient privilege prevents a physician from testifying in a civil action about information the physician acquired when treating the patient, unless the patient consents. The purpose of this privilege is to (1) promote proper treatment by facilitating full disclosure of information, and (2) to protect the patient from embarrassment or scandal that might result if the intimate details of medical treatment were revealed. *Carson*, 123 Wn.2d at 213.

Simply stated, physicians cannot administer effective treatment if patients avoid treatment or withhold information based on a fear that their physician might disclose information obtained as part of the treatment process. Likewise, patients enter the physician-patient relationship assuming that information acquired by the physician will be held in confidence and that the physician will not disclose confidential communications or information related to treatment unless the patient consents or disclosure is required by law. "Mutual trust and confidence are essential to the physician-patient relationship, and from these elements flow the physician's obligations to fully inform the patient of his or her condition, to continue to provide medical care once the patient-physician relationship has

been established, to refer the patient to a specialist if necessary, and to obtain the patient's informed consent to the medical treatment proposed." *Carson*, 123 Wn.2d at 218.

Although Dr. Sonneland does not dispute the confidential nature of the physician-patient relationship, he maintains that actions under RCW 7.70.030(1) must allege facts showing a violation of a standard of care related to a medical procedure. Chapter 7.70 RCW is entitled "Actions for Injuries Resulting from Health Care." Actions under RCW 7.70.030(1) require the plaintiff to establish "[t]hat injury resulted from the failure of a health care provider to follow the accepted standard of care." Nothing in chapter 7.70 RCW or RCW 7.70.030(1) limits this standard to medical procedures.[4]

Significantly, the Washington Supreme Court has previously recognized that a cause of action may lie against a physician for the unauthorized disclosure of privileged information. *Loudon*, 110 Wn.2d at 680; *Smith v. Driscoll*, 94 Wash. 441, 442, 162 P. 572 (1917). The *Smith* court concluded that:

> Neither is it necessary to pursue at length the inquiry of whether a cause of action lies in favor of a patient against a physician for wrongfully divulging confidential communications. For the purposes of what we say it will be assumed that, for so palpable a wrong, the law provides a remedy.

*Id.* Here, the trial court correctly decided that chapter 7.70 RCW supports an action against a physician for the unauthorized disclosure of confidential information related to health care and obtained within the physician-patient relationship. The confidential nature of the physician-patient

---

[4] Other courts have reached different results based on the statutory language. *See Pierce v. Caday*, 244 Va. 285, 292, 422 S.E.2d 371, 374 (1992) (alleged breach of the duty of confidentiality constituted "malpractice" under a statute governing "any tort based on health care"); *Watts v. Cumberland County Hosp. Sys.*, 75 N.C. App. 1, 9, 330 S.E.2d 242, 249 (1985) (action for physicians' unauthorized disclosure should be characterized as an action for medical malpractice); *Wyatt v. St. Paul Fire & Marine Ins. Co.*, 315 Ark. 547, 555, 868 S.W.2d 505, 510 (1994) (nurse's disclosure of confidential information was not a "medical injury" as defined in the Arkansas statute governing malpractice by medical providers).

relationship is recognized by patients, the medical profession, the Legislature, and the Washington courts. A plaintiff seeking damages resulting from health care and alleging a physician's breach of confidentiality in violation of the accepted standard of care must proceed under RCW 7.70.030(1).

*Expert Testimony.* Dr. Sonneland next argues that even if RCW 7.70.030(1) supports an action for breach of confidentiality of the physician-patient relationship, summary judgment was appropriate because Ms. Berger failed to provide expert medical testimony demonstrating a violation of the standard of care or establishing that the violation of the standard of care was the proximate cause of her psychological injuries. Specifically, Dr. Sonneland challenges the testimony of Ms. Berger's standard of care expert because he is a medical ethicist and not a medical doctor. Dr. Sonneland asserts medical ethicists are not competent to testify as to the standard of care applicable to physicians because medical ethicists are not competent to testify as to the diagnosis and treatment of medical conditions. Additionally, Dr. Sonneland argues that Ms. Berger failed to identify any expert who could establish that Dr. Sonneland's communication with Dr. Hoheim was a proximate cause of her psychological injuries.

Generally, expert testimony is required when an essential element in the case is best established by an opinion that is beyond the expertise of a layperson. *Harris v. Groth*, 99 Wn.2d 438, 449, 663 P.2d 113 (1983). In order to recover for medical professional malpractice, Ms. Berger must demonstrate that Dr. Sonneland did not comply with the accepted standard of care. RCW 7.70.030(1). The standard of care is established by showing that "[t]he health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of Washington, acting in the same or similar circumstances." RCW 7.70.040(1). Because the standard is that of reasonable prudence, the standard is not

necessarily determined by physicians generally or by those physicians practicing in the specialty under scrutiny. *Bauer v. White*, 95 Wn. App. 663, 668, 976 P.2d 664, *review denied*, 139 Wn.2d 1004 (1999); *see also Harris*, 99 Wn.2d at 450. Nonphysician witnesses are not per se disqualified from testifying as experts in a medical malpractice action as to causation, reasonable prudence, or underlying facts tending to prove those ultimate facts. *Harris*, 99 Wn.2d at 450.

Ms. Berger alleges that Dr. Sonneland has failed to comply with ethical standards universally recognized by practicing physicians. She has identified an expert who is competent to testify as to the ethical obligations imposed on practicing physicians and the degree of care expected by a reasonably prudent physician. In short, Ms. Berger has presented sufficient expert testimony to establish the standard of care. Because of the nature of Ms. Berger's allegations, the expert here need not be a physician or an expert with a medical degree. *See Bauer*, 95 Wn. App. at 668.

Although Ms. Berger presented expert testimony to establish the standard of care, her case does not include an expert to show causation, which is generally required in medical malpractice actions. *Harris*, 99 Wn.2d at 449; *Morinaga v. Vue*, 85 Wn. App. 822, 831-32, 935 P.2d 637 (1997). However, expert testimony is not necessary if the medical facts are observable to the layperson. *Harris*, 99 Wn.2d at 449. Ms. Berger alleges that she sustained emotional damages and litigation expenses as the result of Dr. Sonneland's unauthorized disclosure of confidential information to her ex-husband. Expert testimony is not required to establish causation here because the medical facts related to causation are observable by laypersons.

*Independent Tort.* Having concluded that Ms. Berger has an action under chapter 7.70 RCW and that she has alleged sufficient facts to satisfy the professional malpractice prong of RCW 7.70.030, we must examine the theoretical basis for an action alleging a breach of physician-patient confidentiality in order to resolve the question of whether Ms.

Berger's claim for emotional damages must be established through objective symptomatology.

Ms. Berger seeks to recover her litigation costs in defending the custody litigation in Montana and compensation for various emotional damages. Traditionally, Washington courts have liberally construed damages for emotional distress for causes of action, including those based on statutory violations, if the wrong committed is in the "nature of an intentional tort." *White River Estates v. Hiltbruner*, 134 Wn.2d 761, 766, 953 P.2d 796 (1998). Consequently, once a plaintiff proves the defendant's intentional wrongful conduct, the plaintiff is required to prove only emotional distress in order to recover the damages attributable to the wrongful act. *Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 920, 726 P.2d 434 (1986). However, when negligent infliction of emotional distress is asserted, the emotional distress must be established through objective symptomatology. The objective symptom requirement applies in cases alleging negligent infliction of emotional distress and goes to proof of liability, not damages. *Nord v. Shoreline Sav. Ass'n*, 116 Wn.2d 477, 485, 805 P.2d 800 (1991).

Dr. Sonneland asserts Ms. Berger's claim must be characterized as a negligence claim because she seeks emotional damages and because he believes that all claims brought under RCW 7.70.030(1) sound in negligence. The trial court viewed Ms. Berger's cause of action as a negligence claim, and, because Ms. Berger sought emotional distress damages, the court applied the case law related to claims alleging negligent infliction of emotional distress. Citing *Nord*, 116 Wn.2d at 484, the trial court concluded that Ms. Berger failed to set forth a prima facie case because she failed to demonstrate objective symptoms of emotional distress.

Recognizing that Washington courts limit the recovery of emotional distress damages in negligence actions, Ms. Berger argues that Dr. Sonneland's breach of confidentiality is analogous to the tort of invasion of privacy. Ms. Berger

bases her argument on *Reid v. Pierce County*, 136 Wn.2d 195, 961 P.2d 333 (1998) where the Washington Supreme Court recognized the common law right to privacy and concluded that damages were recoverable for harm caused by the invasion of privacy and emotional distress.[5] Ms. Berger maintains she is entitled to similar damages for Dr. Sonneland's unauthorized disclosure. She contends a plaintiff alleging the breach of confidentiality arising from a physician-patient relationship must meet the requirements of RCW 7.70.030(1), but need not provide expert testimony demonstrating the presence of objective emotional distress in order to establish a prima facie case for liability.

The conduct alleged by Ms. Berger does not fit within the invasion of privacy framework. First, an invasion of privacy requires that the private fact be publicized.[6] Any disclosure by Dr. Sonneland to Dr. Hoheim was private in nature. Second, Dr. Sonneland's liability here, if any, should be predicated on his breach of confidence rather than the act of publication. As pointed out in *Humphers v. First Interstate Bank*, 298 Or. 706, 711, 696 P.2d 527, 530, 48 A.L.R.4TH 651 (1985), tortious invasion of privacy can be committed by anyone, but "only one who holds information in confidence

---

[5] The *Reid* court acknowledged that RESTATEMENT (SECOND) OF TORTS § 652H (1977) provides for damages available to one who establishes a cause of action for invasion of privacy:

"One who has established a cause of action for invasion of his privacy is entitled to recover damages for

"(a) the harm to his interest in privacy resulting from the invasion;

"(b) his mental distress proved to have been suffered if it is of a kind that normally results from such an invasion; and

"(c) special damage of which the invasion is a legal cause."

*Reid v. Pierce County*, 136 Wn.2d 195, 205 n.4, 961 P.2d 333 (1998).

[6] The *Reid* court concluded that RESTATEMENT (SECOND) OF TORTS § 652D (1977) provides the general rule for invasion of privacy. Section 652D provides:

"One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that

"(a) would be highly offensive to a reasonable person, and

"(b) is not of legitimate concern to the public."

*Reid*, 136 Wn.2d at 205.

can be charged with a breach of confidence." In short, the invasion of privacy framework provides a different type of protection that may or may not further society's interest in maintaining the flow of information between patients and their physicians.

But society has an interest in protecting the confidential nature of the physician-patient relationship. "When a physician discloses confidential information without authority, he invades two distinct interests of the patient: (1) the patient's interest in the security of the confidential relationship and his corresponding expectation of secrecy; and (2) the patient's specific interest in avoiding whatever injuries will result from circulation of the information." *Bullion v. Gadaleto*, 872 F. Supp. 303, 306 (W.D. Va. 1995) (citing Alan B. Vickery, *Breach of Confidence: An Emerging Tort*, 82 COLUM. L. REV. 1426, 1434 (1982)). Invasion of the first interest will most likely affect the patient's willingness to disclose confidential information in the future and invasion of the second interest could result in a variety of injuries to the patient. *Bullion*, 872 F. Supp. at 306. For this reason, "the duty of confidentiality is not meant to protect against one specific type of injury to the patient, but instead discourages any injury that might result from a physician's unauthorized disclosure of information." *Id*. Emotional distress might be one result of an unauthorized disclosure by a physician, but a patient may also suffer a tarnished reputation or damage to a relationship. *Id*. Ms. Berger alleges emotional damages and injury to her relationships with other health care providers.

A patient seeking damages for a physician's unauthorized disclosure of confidential information related to health care should be entitled to those damages necessary to compensate the patient for the harm caused by the physician's disclosure. To hold otherwise deprives this tort action of the ability to compensate victims. We recognize that a claim for breach of physician-patient confidentiality does not fit within the framework of the tort of invasion of privacy. However, we conclude an action alleging a breach of physi-

cian-patient confidentiality is analogous to invasion of privacy and that plaintiffs are entitled to recover damages, including emotional damages, for the harm caused by the physician's unauthorized disclosure. For this reason, the trial court erred by applying the heightened standards adopted for bystander negligent infliction of emotional distress and dismissing Ms. Berger's action because she failed to establish any objective symptoms of emotional distress. *See Hegel v. McMahon*, 136 Wn.2d 122, 126, 960 P.2d 424 (1998).

A cause of action based on a breach of physician-patient confidentiality has been recognized by a majority of jurisdictions confronted with this issue, but courts have struggled to identify the theoretical basis for an actionable breach. Judy E. Zelin, Annotation, *Physician's Tort Liability for Unauthorized Disclosure of Confidential Information About Patient*, 48 A.L.R.4TH 668 (1986). Various theories have been suggested as a basis for a cause of action alleging a breach of physician-patient confidentiality including: invasion of privacy, breach of implied contract, violation of public policy, breach of fiduciary duty, defamation, intentional and negligent infliction of emotional distress, implied private statutory cause of action, breach of trust, detrimental reliance, negligence and medical malpractice. *See Doe v. Roe*, 93 Misc. 2d 201, 209-10, 400 N.Y.S.2d 668, 674-75 (1977); *Biddle v. Warren Gen. Hosp.*, 86 Ohio St. 3d 395, 400, 715 N.E.2d 518, 523 (1999); Vickery, *supra*, at 1437-38. "Invariably, these theories prove ill-suited for the purpose, and their application contrived, as they are designed to protect diverse interests that only coincidentally overlap that of preserving patient confidentiality." *Biddle*, 715 N.E.2d at 523. For this reason, courts have increasingly begun to recognize an action for breach of physician-patient confidentiality as an independent tort. *Id.*

We hold that a tort action exists under RCW 7.70.030(1) for damages resulting from the unauthorized disclosure of confidential information related to health care and obtained within the physician-patient relationship. Moreover, a

plaintiff seeking compensation for emotional damages resulting from such an action need not meet the heightened standards designed to limit liability in cases alleging bystander negligent infliction of emotional distress. The objective symptomatology requirement, imposed to place limits on a tortfeasor's liability to bystanders, is not necessary to limit liability when the physician's liability is already limited by RCW 7.70.010 and the standard of care requirement of RCW 7.70.030(1). Finally, we hold that one who has established a cause of action for breach of physician-patient confidentiality is entitled to recover damages for (a) the harm to his or her interests in confidentiality resulting from the unauthorized disclosure; (b) his or her mental distress proved to have been suffered if it is of a kind that normally results from such an unauthorized disclosure; and (c) special damage of which the unauthorized disclosure is a legal cause.

Taking the evidence in the light most favorable to Ms. Berger, the evidence here is sufficient to raise a question of fact as to whether Ms. Berger was injured by Dr. Sonneland's unauthorized disclosure of confidential information related to health care and obtained within the physician-patient relationship. For this reason, the judgment of the superior court is reversed and the matter is remanded for further proceedings consistent with this opinion.

SWEENEY and BROWN, JJ., concur.

Review granted at 142 Wn.2d 1001 (2000).