IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DAVID E. SWANSON,<br><br>              Appellant,<br><br>        v.<br><br>WILLAM PETERSON, M.D. and "JANE DOE" PETERSON, husband and wife and the marital community thereof: TRENT McKAY, M.D. and "JANE DOE" McKAY, husband and wife and the marital community comprised thereof, OLYMPIA ORTHOPAEDIC ASSOCIATES, PLLC, and JOHN DOE 1· 10,<br><br>              Respondents. | No. 84644-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — David Swanson filed a medical negligence claim against Dr. William Peterson. Peterson had performed arthroscopic surgery on Swanson's shoulder, after which a piece of needle remained. Generally, expert testimony is required in medical negligence cases. However, if the doctrine of res ipsa loquitur applies, a circumstantial inference of negligence arises without expert testimony. That inference, unless completely rebutted, is sufficient to establish a genuine issue of material fact as to breach as well as causation. Because the doctrine applies in this case and was not completely rebutted, we reverse the trial court's summary judgment dismissal of Swanson's claim and remand.

FACTS

In July 2016, Dr. William Peterson arthroscopically operated on David Swanson to repair a tear in his right shoulder's rotator cuff. After the surgery, Swanson continued to have pain in his right shoulder. Peterson ordered an MRI and referred Swanson to his colleague at Olympia Orthopaedic Associates (OOA), Dr. Trent McKay, for a second opinion.

In April 2017, McKay examined Swanson. McKay believed Swanson's pain was from a new tear or an infection. After finding no infection, McKay performed a "revision repair" surgery on September 6, 2017. On September 14, 2017, McKay obtained x-rays of Swanson's shoulder and stated in chart notes, "There is a retained needle present in the rotator cuff from previous rotator cuff repair." McKay "felt that this needed to be removed as well." Swanson agreed, despite McKay explaining the surgery would be "a very difficult procedure considering the needle was stuck in the tendon."

On September 22, 2017, using an x-ray machine to locate the needle he could not visually see, according to a post-operative report, McKay arthroscopically "shaved" the needle away. McKay wrote, "The needle itself was really right in the rotator interval between the supraspinatus and infraspinatus." McKay operated on Swanson a final time in February 2018 to treat an infection in his shoulder and to repair Swanson's ruptured bicep.

Swanson sued Peterson, McKay, and OOA for medical malpractice in June 2019, "pleading all theories of recovery and bases for liability available." He alleged that as a result of the July 2016 surgery by Peterson, he "has undergone

approximately 5 surgeries and has lost full use of his right arm." Further, he alleged "foreign objects were left inside the patient" causing him physical and mental injuries, including past and future pain and suffering.

In August 2020, the defendants moved for summary judgment. Swanson opposed the motion based on res ipsa loquitur. The court denied the motion as to Peterson's allegedly negligent failure to identify the retained instrument tip. However, the court granted the motion in part and dismissed all of Swanson's claims against McKay and OOA.

In July 2021, Peterson moved for summary judgment as to all Swanson's remaining claims against him for lack of expert medical testimony establishing causation. Swanson's response relied on his own declaration describing his pain and suffering and the expert testimony of Dr. Vincent Santoro regarding the pain and suffering Swanson would have felt as a result of surgery to remove the retained needle.[1] At the hearing on Peterson's motion for summary judgment, the court asked both parties to address the doctrine of res ipsa loquitur.

The court granted Peterson's motion, explaining that res ipsa loquitur did not apply because the needle tip was not "clearly the only explanation" for Swanson's pain and suffering. The court then decided that Swanson's medical expert, Dr. Santoro, did not contradict the opinion of Peterson's medical expert, Dr. Van Hofwegen, that Swanson's pain and suffering more likely than not were

---

[1] Swanson's response did not rely on the testimony of his other expert, D.O. Daniel Brzusek, a physiatrist who, when deposed, stated that he would "reserve" the question of whether Peterson complied with the standard of care for an orthopedic surgeon.

caused by his original injury and the subsequent infection. Swanson moved for reconsideration, which the court denied, and Swanson timely appealed.

DISCUSSION

Swanson makes a single assignment of error: he claims the trial court erred in dismissing his case "based on not considering [his] argument of res ipsa loquitur." RAP 10.3(a) states that an appellate brief "should contain" eight sections, the sixth being "argument." Despite identifying an argument section in the table of contents, in the body of Swanson's brief the "standard of review" section is followed directly by a section labeled "Conclusion." In other words, the brief is devoid of argument.[2]

We will typically not consider "an inadequately briefed argument." Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835, (2011) (declining to consider argument where there was no citation to the record or authority). "It is not the function of trial or appellate courts to do counsel's thinking and briefing." Orwick v. City of Seattle, 103 Wn.2d 249, 256, 692 P.2d 793 (1984).

Swanson's briefing is far from the level of specificity that is contemplated by RAP 10.3 and is typically necessary for this court. However, Swanson's briefing does make it clear that he objects to summary judgment granted against him based on the court's decision that res ipsa loquitur did not apply.[3] Br. of

---

[2] Swanson's counsel confirmed to the court that the brief was complete as filed.
[3] Peterson makes a technical argument that the scope of the assigned error is no greater than whether the trial court considered res ipsa loquitur at all. We disagree, as Swanson challenges the summary judgment dismissal of his claim.

4

Appellant at 7. His brief also identifies key cases on which his res ipsa loquitur argument is based. Id. at 3, 5.[4] Together with the record, which includes briefing and argument on this same issue below, Swanson's materials on appeal allow us to discern his legal argument. Therefore, we will address Swanson's argument on the merits.

On appeal of an order granting summary judgment, we review de novo whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); see Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). "The moving party has the burden of showing that there is no genuine issue as to any material fact." Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 70, 170 P.3d 10 (2007). We view all facts and reasonable inferences in the light most favorable to the nonmoving party. Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012).

To prevail on a claim of medical malpractice a plaintiff must prove the following:

> (1) [t]he health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of Washington, acting in the same or similar circumstances;
> (2) Such failure was a proximate cause of the injury complained of.

---

[4] Swanson cites to Ripley v. Lanzer, 152 Wn. App. 296, 215 P.3d 1020 (2009), and Bauer v. White, 95 Wn. App. 663, 976 P.2d 664 (1999).

Ripley v. Lanzer, 152 Wn. App. 296, 306, 215 P.3d 1020 (2009) (citing RCW 7.70.040(1)).

"Res ipsa loquitur" means "the thing speaks for itself." W. PAGE KEETON, ET AL., PROSSER AND KEETON ON TORTS § 39, at 243 (5th ed. 1984). "Res ipsa loquitur is not an independent legal claim; it is instead a tool of circumstantial evidence that allows a plaintiff to proceed with a negligence claim when a defendant's specific act of negligence is unclear." Wells v. Nespelem Valley Elec. Coop., Inc., 13 Wn. App. 2d 148, 155, 462 P.3d 855 (2020) (citing Pacheco v. Ames, 149 Wn.2d 431, 436, 69 P.3d 324 (2003)). Generally, the doctrine "provides nothing more than a permissive inference" of negligence. Curtis v. Lein, 169 Wn.2d 884, 889, 239 P.3d 1078 (2010) (quoting Zukowsky v. Brown, 79 Wn.2d 586, 600, 488 P.2d 269 (1971)). Negligence and causation may be proved by circumstantial evidence, and the inference supplied by res ipsa loquitur is merely one kind of circumstantial evidence from which a jury may reasonably infer both. Ripley, 152 Wn. App. at 307. Whether res ipsa loquitur applies in a given context is a question of law. Curtis, 169 Wn.2d at 889.

I.     Whether the doctrine of res ipsa loquitur applies

Swanson argues this court should remand for a trial on the merits "based on the doctrine of res ipsa loquitur."[5] Peterson argues res ipsa loquitur does not

---

[5] Peterson argues that Swanson's medical experts were insufficient to create a genuine issue of material fact. Dr. Brzusek testified he had no opinion regarding the standard of care, and Dr. Santoro's opinion is a one-paragraph conclusion. Swanson does not argue that these experts' opinions are sufficient as to the standard of care and breach, but instead relies on the inference of res ipsa loquitur.

apply to this case and that expert medical evidence is necessary to establish medical negligence. We hold that the doctrine does apply and that expert medical evidence in these circumstances is not needed to establish a triable question of fact.

A plaintiff may rely upon res ipsa loquitur's inference if (1) the accident or occurrence that caused the plaintiff's injury would not ordinarily happen in the absence of negligence, (2) the instrumentality or agency that caused the plaintiff's injury was in the exclusive control of the defendant, and (3) the plaintiff did not contribute to the accident or occurrence. Curtis, 169 Wn.2d at 891. The first element is satisfied if one of three conditions is present:

> When the act causing the injury is so palpably negligent that it may be inferred as a matter of law, i.e., leaving foreign objects, sponges, scissors, etc., in the body, or amputation of a wrong member; (2) when the general experience and observation of mankind teaches that the result would not be expected without negligence; and (3) when proof by experts in an esoteric field creates an inference that negligence caused the injuries.

Curtis, 169 Wn.2d at 891 (internal citations omitted).

Countering the summary judgment motion, Swanson contended the three elements for res ipsa loquitur are satisfied: the incident could not have happened without negligence in the first place because Peterson left the needle in his shoulder, the arthroscopic device was under Peterson's control, and he, Swanson, was not involved in the procedure. On de novo review, we agree with Swanson.

First, leaving foreign objects in the body is an example of an act so "palpably negligent that it may be inferred as a matter of law." Curtis, 169 Wn.2d

7

at 891. Peterson does not dispute that after he performed the surgery, a foreign object—a retained needle tip—was present in Swanson's rotator cuff.[6] Second, the undisputed record shows the arthroscopic device holding the needle was under Peterson's control during the surgery. Finally, it is also undisputed that Swanson was under general anesthesia during the procedure and thus did not contribute to the occurrence. Thus, the three elements are satisfied and the doctrine of res ipsa loquitur applies to the facts of this case.

Peterson argues that res ipsa loquitur does not apply to medical malpractice actions, which typically require expert medical testimony.[7] However, several cases squarely address this proposition and hold to the contrary.

In Ripley, the court held that because the plaintiff established that the doctrine of res ipsa loquitur applied, she was not required to present expert medical evidence to avoid summary judgment. 152 Wn. App. at 315. There, Dr. Lanzer performed arthroscopic surgery on the plaintiff's knee. Id. at 302. A blade from his scalpel became detached from the scalpel's handle and lodged itself in the plaintiff's knee. Id. at 303. Lanzer closed the plaintiff's incisions, but then the surgical team discovered the blade was missing. Id. While the patient was still anesthetized, Lanzer reopened the knee and tried to remove the blade, but it

---

[6] Reyes v. Yakima Health District, 191 Wn.2d 79, 90, 419 P.3d 819 (2018), cited by Peterson, is distinguishable. There, the claimed negligence was a misdiagnosis, which the court reasoned "is not so palpably negligent as leaving foreign objects in a body," nor can a layperson's general experience and observation show that it is negligent, so the res ipsa loquitur inference did not apply. Id. (internal quotations omitted). Here, Petersen left a foreign object, a piece of needle, in Swanson's body.

[7] Peterson does not dispute he owed a duty of care not to leave foreign objects in Swanson's body.

broke, and Lanzer decided it was best to close the patient's knee and try again the next day. Id. at 303-04. Lanzer successfully removed the blade from the patient's knee the next day. Id. at 304.

The plaintiff sued Lanzer for medical malpractice. Lanzer moved for summary judgment after all of the plaintiff's disclosed medical expert witnesses withdrew. Id. at 305. The trial court granted his motion, and this court reversed. Id. at 305, 315. The court reasoned,

> Generally, expert testimony is necessary to establish the standard of care for a health care provider in a medical malpractice action. Expert testimony is not necessary to establish the standard of care when medical facts are observable to a layperson and describable without medical training. For example, "the doctrine of res ipsa loquitur provides an inference of negligence from the occurrence itself which establishes a prima facie case sufficient to present a question for the jury."

Id. at 306-07 (quoting Metro. Mortgage & Sec. Co., Inc. v. Wash. Water Power, 37 Wn. App. 241, 243, 679 P.2d 943, 944 (1984)). The court determined that "the Ripleys have established all three elements of the requisite elements of res ipsa loquitur, relieving them from the requirement to provide expert medical evidence to survive . . . summary judgment." Id. at 311.

The Ripley court relied on Bauer v. White, 95 Wn. App. 663, 976 P.2d 664 (1999), in which the court held that "[o]nce it is established that the object was inadvertently left inside the patient's body (i.e., negligence), the patient is entitled to any damages that were proximately caused from such negligence." Bauer, 95 Wn. App. at 669. In that case, Dr. White unintentionally left a metal positioning pin in the patient's leg. Id. at 664. Later, White x-rayed the patient's leg and

discovered the pin inside the patient's tibia. Id. at 665. The patient had pain after her surgery. Id. While neither White nor the other doctors to whom he referred the patient could find a reason the pin would cause the patient pain, he removed it at the patient's request seven months later. Id.

The trial court in Bauer dismissed the medical negligence claim because the patient failed to refute the testimony of White's expert witness. Id. at 666. Thus, the question on appeal was whether the patient was required to support the medical negligence claim with expert medical testimony on the standard of care to survive summary dismissal. Id. Observing that it has long been the law in Washington that a surgeon who unintentionally leaves a foreign object in a patient's body is negligent, the court reasoned that therefore, "[e]xpert testimony is necessary only if the medical facts are not observable to the lay person." Id. at 667. The court reversed summary judgment granted to White because "[o]nce it is established that the object was inadvertently left inside the patient's body (i.e., negligence), the patient is entitled to any damages that were proximately caused from such negligence." Id. at 669.

Thus, Ripley and Bauer establish that, once the doctrine of res ipsa loquitur applies, a plaintiff in a medical malpractice case is not required to present expert medical evidence to avoid summary judgment. Ripley, 152 Wn. App. at 315.

Peterson also points to his expert's testimony that "the fact that a needle tip broke off during that surgery is a consequence of the device itself, and does not imply that Dr. Peterson fell below the standard of care." But generally the

physician is responsible, i.e., has a duty of care, to account for foreign objects used in surgery.[8] Bauer, 95 Wn. App. at 668; cf. Van Hook v. Anderson, 64 Wn. App. 353, 361, 824 P.2d 509 (1992) (hospital policy placed the responsibility of counting sponges after surgery on nurses, so there was evidence as to why the surgeon could not be responsible for the sponge left in patient). Here, there is no evidence that someone besides Peterson had a duty of care to account for the needle tip.

Thus, Swanson has established the three requirements for the res ipsa loquitur doctrine to apply: (1) a foreign object left in a patient is an act that is so "palpably" negligent that it may be inferred as a matter of law," Curtis, 169 Wn.2d at 891; (2) the surgery was under Peterson's control; and (3) Swanson was anesthetized, so he could not have contributed to the occurrence. Because the res ipsa loquitur doctrine applies, expert medical evidence of negligence was not needed to establish a triable question of fact as to whether Peterson breached his duty of care.[9]

---

[8] This is also referred to as the "captain of the ship" doctrine. See 16 DAVID K. DEWOLF AND KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 16:9, at 804 (5th ed. 2020).

[9] While we review de novo whether the doctrine applies, it is clear from the record that the trial court erred by deciding res ipsa loquitur does not apply because the retained needle was not "clearly the only explanation" for Swanson's pain and suffering. The proper analysis, however, is the opposite: if the res ipsa loquitur doctrine applies, its inference is rebutted only if the defendant has evidence that completely explains how the accident occurred. Curtis, 169 Wn.2d at 894 ("Instead, res ipsa loquitur is inapplicable where there is evidence that is completely explanatory of how an accident occurred and no other inference is possible that the injury occurred another way."). There was no such rebuttal evidence here.

II. <u>Whether the doctrine provides an inference of causation without expert medical evidence</u>

The parties also dispute whether, if res ipsa loquitur applies but there is no expert evidence, the inference is sufficient only to create a triable issue regarding breach or also as to causation. Swanson's minimal briefing cites to <u>Bauer</u>, 95 Wn. App. at 669, for the proposition that the retained needle caused him "some degree of pain and suffering" to remove it. Peterson argues the res ipsa inference extends to causation "only where there was unrefuted testimony that a particular surgery was necessary, and performed, to remove the retained object at issue."[10] We determine that the res ipsa loquitur inference is sufficient to establish a question of fact as to causation as well as breach.

Peterson's specific argument arises from his interpretation of <u>Bauer</u>, in which the court reasoned,

> A patient has the right to have the foreign object removed from his or her body, even if removal is psychologically motivated. <u>Martin v. Rosomoff</u>, 370 So.2d 1228, 1229 (Fla. Dist. Ct. App. 1979). Under these circumstances, the physician's negligence is the "unequivocal proximate cause of some damage," including the additional surgical procedure. <u>Id.</u> at 1229-30. A physician may also be liable for pain and suffering caused by the removal of the object. <u>McCormick [ v. Jones]</u>, 152 Wash. 508, 514-15, 278 P. 181 (1929).

---

[10] Peterson also cites <u>McCormick v. Jones</u>, 152 Wash. 508, 278 P. 181 (1929), for the proposition that a physician responsible for leaving an object in a patient, even negligently, is liable only for resulting damages, not for pain and suffering resulting from other causes. The proposition is stated in a misleading manner. Instead, <u>McCormick</u> explained that the defendant surgeon "[wa]s, of course, not liable in any way for the <u>original</u> injury, nor is he liable for any of the pain and suffering caused thereby, nor for such as would naturally follow from such an operation as defendant performed," but "the rule is that, negligence having been established from which bad results would naturally follow, the burden is on the [defendant] to limit the recovery by showing that the pain and suffering were the result of intervening causes." 152 Wash. at 514-15 (emphasis added).

> The Bauers must establish that injury proximately resulted from leaving the pin in Mrs. Bauer's leg. Clearly, on the record before us, having left the pin in Mrs. Bauer's leg, Dr. White was not negligent in failing to immediately remove it. His experts opined that the pin was in a position where it would not have affected the function of Mrs. Bauer's leg, nor should it have caused discomfort. But she was entitled to have it removed. And she likely incurred some pain and suffering from the removal of the pin, outside of that attributable to the knee arthroplasty.

Bauer, 95 Wn. App. at 669-70. Peterson interprets the second paragraph to mean that the doctrine's inference will not reach to causation unless there is unrefuted testimony that a surgery was necessary and performed primarily to remove a retained object.

Peterson's proposition is not the law. Discussing proximate cause and Bauer, the court in Ripley "disagree[d]" with the same proposition. It stated:

> We disagree [with the claim that there is no showing of proximate cause] on the bases we have already discussed in this opinion [i.e., res ipsa loquitur]. On this record, the inferences of negligence and causation that arise from unintentionally leaving a foreign object in Mrs. Ripley's knee are sufficient to create genuine issues of material fact for trial.
>
> As McCormick v. Jones and Bauer make clear, the Ripleys are entitled to all damages that were proximately caused from such negligence in the event the jury determines that Dr. Lanzer's failure to notice the missing blade before closing the initial incisions was negligent. Although Dr. Lanzer claims that the Ripleys cannot prove that the reopening and reclosing of the portals on March 15 caused scarring or pain apart from what otherwise occurred on March 16, that is for a jury to decide, not a judge.

Ripley, 152 Wn. App. at 316-17.[11] Ripley is clear that once the doctrine of res ipsa loquitur applies, causation is a jury question. See also Bauer, 95 Wn. App.

---

[11] "While mere speculation is insufficient to establish causation, it is unnecessary for causation to be established by direct and positive evidence; it is sufficient to present a chain of

at 669 ("Once it is established that the object was inadvertently left inside a patient's body (i.e., negligence), the patient is entitled to any damages that were proximately caused from such negligence.").

Here, with respect to causation, Peterson's evidence is his expert's testimony that "Mr. Swanson's suboptimal outcome was likely due to the combined effect of his original injury, and his P. acnes infection. That outcome was not likely related to the retained needle tip." Peterson argues his evidence "shifted the burden" to Swanson to submit admissible expert testimony on causation. However, because res ipsa loquitur applies, Peterson's evidence at most creates a question of fact as to the extent of injuries caused by the retained needle tip as opposed to some other cause. See Curtis, 169 Wn.2d at 894 ("A plaintiff claiming res ipsa loquitur is not required to eliminate with certainty all other possible causes or inferences in order for res ipsa loquitur to apply.") (internal quotations omitted).

We hold that because the doctrine of res ipsa loquitur applies, the evidentiary inference therefrom creates a question of fact as to causation as well as breach of duty. Accordingly, we reverse the trial court's grant of summary judgment and remand for further proceedings consistent with this opinion.

---

circumstances from which causation is reasonably and naturally inferable." 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE TORT LAW AND PRACTICE § 16:12 at 809 & n.4 (5th ed. 2020).

Chung, J.

WE CONCUR:

Díaz, J.

Brennan, J